**MONTGOMERY COUNTY, Allegheny County, Cambria County, Centre County, Clearfield County, Crawford County, Cumberland County, Delaware County, Erie County, Fayette County, Greene County, Huntingdon County, Indiana County, Luzerne County, Lycoming County, Mercer County, Northumberland County, Schuylkill County, Somerset County, Wayne County and Westmoreland County, Petitioners**

v.

**DEPARTMENT OF CORRECTIONS of the Commonwealth of Pennsylvania, Respondent.**

Commonwealth Court of Pennsylvania.

Argued March 2, 2005.

Decided July 22, 2005.

As Amended Aug. 4, 2005.

Philip W. Newcomer, Norristown, for petitioners.

Michael A. Farnan, Chief Counsel, Camp Hill, for respondent.

BEFORE: COLINS, President Judge, SMITH–RIBNER, Judge, PELLEGRINI, Judge, LEADBETTER, Judge, COHN JUBELIRER, Judge, SIMPSON, Judge, and LEAVITT, Judge.

OPINION BY Judge COHN JUBELIRER.

In this original jurisdiction action, numerous counties in which state correctional institutions are located (collectively, Petitioners) seek a declaratory judgment that the Department of Corrections (DOC) is obligated to pay for the costs of prosecution of inmates arising out of "crimes and offenses committed on the grounds or within the buildings of any State penal or correctional institution," whether or not they were committed during an escape. We must decide whether a recent legislative amendment shifted the burden of paying these costs from the sentencing county to the Commonwealth. Before the Court is Petitioners' Motion for Judgment on the Pleadings.

The facts are not in dispute. By Section 1 of the Act of December 20, 2000, P.L. 770 (Act 107), the Legislature amended Section 2 of the Act of July 22, 1913, P.L. 912, *as amended,* 61 P.S. § 2151(b) (1913 Act). Section 2 of the 1913 Act, as amended by various other acts prior to 2000, before the Act 107 Amendment, had provided that the following costs be borne by ***the sentencing county:*** 1) transporting escaped prisoners from the place of capture to the correctional institution after being sentenced for escape; 2) the commission of any crime following escape and before apprehension; 3) maintenance while confined in the county jail awaiting trial for escape; 4) trial expenses due to escape or violations relating to escape; 5) trial expenses for crime and offenses committed after such escape and before apprehension; and, 6) ***trial expenses for crimes and offenses committed on the grounds or within the buildings of the state correc-***

*tional institution.*[1]

Act 107 amended this Section, gave it the new title "Escapee costs," and divided the amended Section into two subsections, the first concerning inmates under "county jurisdiction," and the second concerning inmates under "state jurisdiction." After the Act 107 Amendment, the sentencing county continues to have responsibility for costs arising out of escape when the escapee is under county jurisdiction; however, if the *state* had jurisdiction over the escapee, the costs arising out of the escape are now the responsibility of the *state*. In addition, the amended version of Section 2, as did its predecessor, continued to address the costs of trials for crimes and offenses committed on the grounds or within the buildings of any county or state penal facility.[2] Under Act 107, trial costs for inmates held in a *county* institution continue to be the responsibility of the county that originally sentenced the inmate. The trial costs for inmates who are held in *state* institutions, however, are now the responsibility of the Commonwealth.[3] At issue is whether the

1. Immediately prior to the Act 107 Amendment, this provision stated:

   The cost of transporting escaped persons, prisoners, and convicts from the place of capture to the correctional institution, penitentiary, or reformatory after being sentenced for such escape, or for the commission of any crime or offense following such escape and before apprehension, the cost of maintenance while confined in the county jail awaiting trial, as well as the costs of the trial for escape or breaking away of persons, convicts, and prisoners from the several penitentiaries, correctional institutions, and reformatories in the Commonwealth of Pennsylvania, or the violation by said persons, convicts, and prisoners of any or all of the penal statutes relating to escape, or of the trial for crime and offenses committed after such escape and before apprehension, or *of the trial for crimes and offenses committed on the grounds or within the buildings of the correctional institution,* penitentiary, or reformatory, as well as the costs incurred in any proceedings on writs of habeas corpus, coram nobis or other petitions arising out of any escape or crime of the trials therefor, or in any appeals of any such proceedings or trials, shall in each instance be borne and paid *by the respective counties of the Commonwealth from whose courts the said persons, convicts, and prisoners shall have been originally committed to the said penitentiaries, correctional institutions, or reformatories.* The term "costs" also includes, but is not limited to, charges for court stenographer, district attorney, witness fees, justice of the peace costs, clerk of court, public defender and court appointed attorney.

   The county liable for such costs, as above provided, shall, upon bills rendered by the county paying such costs in the first instance, pay to such county the amount of such costs, forthwith.
   (Emphasis added.)
   The following title heading for this Section appears in Purdon's Pennsylvania Statutes: **"Liability in cases of escape or crimes committed by convicts and prisoners."** However, the Pamphlet Laws do not reflect that this title was ever part of the legislation and, thus, we do not consider it in our analysis.

2. This language was first added by Section 1 of the Act of February 28, 1933, P.L. 3. That provision also amended the original title of the act to include the following language, "fixing the venue for crimes and offenses committed on the grounds or within the buildings of correctional institutions, penitentiaries and reformatories, and making counties from which such persons, prisoners, and convicts are committed liable for costs of the trial, and providing for the payment of costs in all cases of liability by the county from which original commitments are made."

3. Subsection b of Section 2 now provides:

   **Escapee Costs.**

   . . .

   (b) State jurisdiction.—**The cost** of transporting escaped persons, prisoners, and convicts under the jurisdiction of the Commonwealth from the place of capture to any State penal or correctional institution after being sentenced for such escape, or for the commission of any crime or offense following such escape and before apprehension, as well as the costs of the trial for escape or

"trial costs" described in Act 107 are only those that are related to an escape.

■ The State Correctional Institution at Graterford (SCI–Graterford) is located in Montgomery County. After Act 107 was passed, the Court of Common Pleas of Montgomery County directed its Clerk of Courts to bill "the Commonwealth of Pennsylvania," *i.e.*, DOC, for the costs it incurred from trials for crimes committed on the grounds of SCI–Graterford, even though those crimes were not committed in conjunction with an escape. In response, DOC, through its Chief Counsel, advised the President Judge of the Court of Common Pleas of Montgomery County of DOC's legal position: that DOC is obligated to pay trial costs only where the trial is for crimes committed during an escape. In order to resolve the issue of the scope of DOC's obligation to pay these costs, Petitioners filed their "Action for Declaratory Judgment." DOC filed an answer and new matter and Petitioners then filed an answer to the new matter.[4] The pleadings are now closed and Petitioners have filed a motion for judgment on the pleadings.[5]

We must decide whether the Act 107 Amendment to the 1913 Act requires DOC to bear and pay the costs of trial for *all* crimes and offenses committed by inmates at state correctional institutions or on the grounds of such institutions, or *only* for trials for crimes and offenses related to an escape.

■ The precise language at issue is "[t]he cost . . . of the trial for crimes and offenses committed on the grounds or within the buildings of any State penal or correctional institution . . . shall in each instance be borne and paid by the Commonwealth. . . ." 61 P.S. § 2151(b). Petitioners argue that this language does not specifically limit the Commonwealth's responsibility for costs only to crimes relating to escape; they assert that the statute is clear on its face. However, we find this language to be ambiguous because the title of the Section is "Escapee Costs" and the text in the same sentence immediately preceding and following this language deals only with escapee costs. We, therefore, do not agree with Petitioners that the statute is without ambiguity and so, turn to principles of statutory construction to aid us in interpreting this language. The fundamental rule for interpreting statutes is to ascertain the intent of the General Assembly.[6] When construing a statute, we must

---

breaking away of persons, convicts, and prisoners from any State penal or correctional institution, or the violation by said persons, convicts, and prisoners under the jurisdiction of the Commonwealth of any or all of the penal statutes relating to escape, or of the trial for crime and offenses committed after such escape and before apprehension, or **of the trial for crimes and offenses committed on the grounds or within the buildings of any State penal or correctional institution,** as well as the costs incurred in any proceedings on writs of habeas corpus, coram nobis or other petitions **arising out of any escape or crime or the trials therefore,** or in any appeals of any such proceedings or trials, **shall in each instance be borne and paid by the Commonwealth.** The term· "costs" also includes, but is not limited to, charges for

court stenographer, district attorney, witness fees, district justice, clerk of court, public defender and court appointed attorney.
(Emphasis added.)

4. The County Commissioners Association has filed an amicus brief in support of Petitioners.

5. We may grant judgment on the pleadings only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Goldsmith v. City Council of Easton,* 817 A.2d 565, 568 n. 3 (Pa.Cmwlth.2003).

6. Section 1921(a) of the Statutory Construction Act of 1972(SCA), 1 Pa.C.S. § 1921(a), states:

   **Legislative intent controls**

give effect to every word, sentence or provision. *Daly v. Hemphill,* 411 Pa. 263, 273, 191 A.2d 835, 841–42 (1963); *Dep't of Auditor Gen. v. State Employees' Ret. Sys.,* 860 A.2d 206, 209 (Pa.Cmwlth.2004).

■ DOC proffers several arguments involving statutory interpretation and legislative intent to support its interpretation of the statute. It asserts that because the *title* of Section 1 is now "Escapee Costs," the intent of the amended statute is to require DOC to pay for costs related *only* to the crime of escape. Additionally, DOC contends that, when considering various factors that the legislature has stated are appropriate considerations for discerning its intent, Section 2 is properly read as limiting its fiscal responsibility to escape-related matters. As DOC correctly notes in its brief on pages 7–8, among those factors are: the reason for the amendment, the mischief sought to be remedied, the historical background for the legislation, the object to be obtained, the effect of a contrary interpretation and the administrative interpretation of the statute.

DOC correctly points out that in Act 107 the legislature added the title "Escapee Costs." It argues that this title, along with the fact that the word "escape" is used repeatedly throughout Section 2, evidences a legislative intent to limit DOC's responsibility to pay costs only to escape-related matters. The use of section titles in statutory construction is governed by Section 1924 of the SCA, 1 Pa.C.S. § 1924, which states that "[t]he title and preamble of a statute may be considered in the construction thereof. . . . The headings prefixed to titles, parts, articles, chapters, sections and other divisions of a statute shall not be considered to control but may be used to aid in the construction thereof."

DOC's argument is thoughtful and well-articulated. However, the clause at issue also appeared in the prior version of the statute, which did not contain the title "Escapee Costs," and the clause was not altered in any way by the Act 107 Amendment. Under the rule, the specific title does not control, but rather is an aid to interpretation. We, therefore, must also look at the other factors that are indicative of legislative intent: the reason for the amendment, the mischief sought to be remedied, the historical background for the legislation, the object to be obtained, the effect of a contrary interpretation and the administrative interpretation of the statute.

■ DOC argues that these factors support its interpretation of the statute. Relying on floor debates and bill analyses, DOC states that the "occasion and necessity" for the amendment, and the "mischief to be remedied" by the amendment was the high cost of escapes born by political subdivisions, referencing, in particular, three highly publicized escapes from two different state correctional facilities. It believes the "object to be attained" by the amendment is assisting political subdivisions to pay for the unexpected costs arising from escapes. However, comments of individual legislators made in debate are not properly considered when ascertaining legislative intent. *Roman Catholic Archdiocese v. Pennsylvania Human Relations Comm'n,* 119 Pa.Cmwlth. 445, 548 A.2d 328, 330–331 (1988), *petition for allowance of appeal denied,* 524 Pa. 636, 574 A.2d 76 (1989). Similarly, as with floor debates, a bill analysis is not evidence of legislative intent. *Monongahela Valley Hosp., Inc. v. Unemployment Comp. Bd. of Review,* 95

(a) The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly.

Every statute shall be construed, if possible, to give effect to all its provisions.

Pa.Cmwlth. 314, 505 A.2d 400, 401 (1986). We have stated that a bill analysis "is nothing more than the opinion of unknown individual(s) of what a proposed bill says. There is no indication that this analysis purports to express the intent even of a committee, let alone the entire legislature." *Id.* In reviewing the historical background for this legislation, DOC notes that Section 2's predecessor language did not require DOC to pay costs of criminal prosecutions arising from prison matters. However, this does not address the change the legislature intended from the amendment.

In examining the reason and need for the amendment, and the goal to be accomplished, we are struck by provisions of a related act, the Act of December 20, 2000, P.L. 916 (Act 122), concerning payment of costs for *maintenance* of inmates who commit new crimes while in prison, because this act indicates specifically that DOC is to assume fiscal responsibility in such cases.

Act 122 concerns the same general subject matter as Act 107, DOC's fiscal responsibility for both escape-related matters *and* for inmates who commit new crimes while incarcerated in state facilities.

In addition, Act 122 was passed on the same date as Act 107. Where statutes relate to the same persons or things or the same class of persons or things they are *in pari materia.* Section 1932(a) of the Statutory Construction Act of 1972 (SCA), 1 Pa.C.S. § 1932(a). "Statutes in pari materia shall be construed together if possible, as one statute." Section 1932(b) of the SCA, 1 Pa.C.S. § 1932(b).

Act 122 does not address costs of *trial* for escapes or attempted escapes or for new crimes committed while incarcerated. However, it does expressly change who is to pay the costs for *maintenance* of an inmate convicted of escaping or attempting escape from a state correctional facility and *maintenance* of an inmate convicted of a new crime that occurred while the inmate was incarcerated in a state prison. Under the prior law, maintenance costs, for both escape-related matters and new crimes committed in prison, were placed upon the county that originally convicted the inmate; under Act 122 however, the legislature has shifted that cost responsibility to the Commonwealth where the inmate was under the jurisdiction of DOC when the escape or crime was committed.[7]

---

7. Specifically, under prior law, the cost for *maintenance* of state convicts who were convicted of crimes committed while in prison was placed on the original sentencing county. Section 1 of the Act of May 17, 1957, P.L. 161, (Act 1957), *formerly* 61 P.S. § 2153, repealed by Section 3 of Act 122, provided:

**Maintenance of convicts convicted of crimes committed while in prison**

Where a person is confined in a State penal or correctional institution either by virtue of his sentence pursuant to his conviction or plea of guilty to a criminal charge, or by virtue of a commitment issued by any court of the Commonwealth having jurisdiction, and while so confined any such person commits a criminal offense and is subsequently convicted or enters a plea of guilty thereto, expenses of keeping such person in any State penal or correctional institution pursuant to such subsequent conviction or plea of guilty **shall be borne by the county in which the person was originally convicted.**

(Emphasis added.)

Act 122, in addition to repealing this provision, added a new provision that shifted that cost responsibility onto the Commonwealth. It reads as follows:

**Criminal offense during confinement**

Where a person is confined in a State penal or correctional institution either by virtue of his sentence pursuant to his conviction or plea of guilty to a criminal charge or by virtue of a commitment issued by any court of the Commonwealth having jurisdiction and while so confined any such person commits a criminal offense and is subsequently convicted or enters a plea of guilty

From this newly created overall statutory structure, it appears that the legislature is placing financial responsibility on DOC for the additional costs resulting from illegal activities committed on the grounds of state correctional facilities, where the inmates are within DOC's custody and control. This represents a shift from the previous legislative approach, which placed financial responsibility on the County that first placed the inmate in the correctional system, whether or not the costs resulted from subsequent illegal activities. It is this legislative shift in financial accountability that militates against DOC's arguments regarding legislative intent. This is supported by the fact that, when the legislature enacted the amendment, it used the same operative language to delineate the types of costs imposed on the Commonwealth ("for crimes and offenses committed on the grounds or within the buildings of correctional institutions") as it had previously used when delineating the types of costs that had been imposed on the sentencing county, in the 1933 version of the statute. Thus, there is evidence to show that Act 107 changed only the *designation*

of the party responsible to pay, not the *nature* of the costs actually concerned.

DOC is concerned that this construction of the statute, if accepted by the Court, will require that DOC be given "massive amounts of funding" so that it can, in turn, fund the County district attorneys' offices, which prosecute the crimes. DOC also posits that it may be forced to fund prosecutions with which is does not agree and which it has, so far, been handling through its internal misconduct process. Because DOC proffered no evidence to support this concern, which is rather speculative, it does not outweigh the reasons which support a contrary result.

Finally, DOC contends that its own administrative interpretation should be given weight. However, DOC's interpretation, although a factor to be considered, does not control the outcome here, given the numerous reasons that support a contrary result.

Based on the foregoing analysis, we grant Petitioners' Motion for Judgment on the Pleadings.

thereto, the expenses of keeping such person in any State penal or correctional institution pursuant to such subsequent conviction or plea of guilty **shall be borne by the Commonwealth.**
61 P.S. § 2152.1 (emphasis added).
Similarly, the cost for maintenance of state convicts convicted of escape-related charges was also initially placed on the original sentencing county. Section 3 of the 1913 Act stated, "[i]n case of conviction and sentence of said escaping convicts and prisoners the costs of maintenance of said convicts, and prisoners, under such new sentence, **shall be borne by the county from which said convict or prisoner shall have been originally committed.**" (Emphasis added.) Act 122, however, significantly revised this provision by distinguishing between inmates escaping from county prison facilities and those escaping from state correctional institutions and placed

maintenance costs for the latter group on the Commonwealth. This provision, as amended by Act 122, now reads, in pertinent part:
**Maintenance of escaping convicts under new sentence**
   (a) **County jurisdiction.**—In case of conviction and sentence of said escaping convicts and prisoners, under the jurisdiction of the county, the costs of maintenance of said convicts, and prisoners, under such new sentence, shall be borne by the county from which said convict or prisoner shall have been originally committed.
   (b) **State jurisdiction.—In case of conviction and sentence of said escaping convicts and prisoners, under the jurisdiction of the Commonwealth, the costs of maintenance of said convicts and prisoners, under such new sentence, shall be borne by the Commonwealth.**
   . . .

### ORDER

**NOW,** July 22, 2005, Petitioners' Motion for Judgment on the Pleadings, filed in the above-captioned matter, is hereby granted.

SMITH–RIBNER, J., files a dissenting opinion

### Dissenting Opinion by Judge SMITH–RIBNER.

I respectfully dissent from the majority's interpretation of the statute at issue, Section 2(b) of the Act of July 22, 1913, P.L. 912 (1913 Act), *as amended,* 61 P.S. § 2151(b), as amended by Section 1 of the Act of December 20, 2000, P.L. 770 (Act 107). The majority concludes that a phrase in Section 2(b) of the 1913 Act, as amended by Act 107, requires the Commonwealth to bear the costs of the trials for all crimes and offenses committed on the grounds or within the buildings of the state penal or correctional institution, regardless of whether the crimes or offenses were committed during an escape or an attempt to escape.[1]

The language of Section 2(b), which otherwise deals exclusively with matters relating to escapes, and the historical context and the effect of the pertinent amendatory acts show that Section 2(b) as amended by

Act 107 is not intended to apply to trials for all crimes or offenses committed at state correctional institutions but rather only to those crimes or offenses related to an escape or an attempt to escape. I agree with the majority that the statute is ambiguous and that rules of statutory construction must be applied to ascertain the intent of the legislature.

Section 1924 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1924, relating to construction of titles, preambles, provisos, exceptions and headings, provides:

> The title and preamble of a statute may be considered in the construction thereof. Provisos shall be construed to limit rather than to extend the operation of the clauses to which they refer. Exceptions expressed in a statute shall be construed to exclude all others. The headings prefixed to titles, parts, articles, chapters, sections and other divisions of a statute shall not be considered to control but may be used to aid in the construction thereof.

The "title" specified in the first sentence of Section 1924 plainly is the description of the contents of an act that precedes the text of the act in the Laws of Pennsylva-

---

61 P.S. § 2152 (emphasis added).

1. Section 2(b) of the 1913 Act, 61 P.S. § 2151(b), provides, with supplied emphasis:

    **(b) State jurisdiction.**—The cost of transporting escaped persons, prisoners, and convicts under the jurisdiction of the Commonwealth from the place of capture to any State penal or correctional institution after being sentenced for such escape, or for the commission of any crime or offense following such escape and before apprehension, as well as the costs of the trial for escape or breaking away of persons, convicts, and prisoners from any State penal or correctional institution, or the violation by said persons, convicts, and prisoners under the jurisdiction of the Commonwealth of any or all of the penal statutes relating to escape,

or of the trial for crime and offenses committed after such escape and before apprehension, *or of the trial for crimes and offenses committed on the grounds or within the buildings of any State penal or correctional institution,* as well as the costs incurred in any proceedings on writs of habeas corpus, coram nobis or other petitions arising out of any escape or crime or the trials therefore [sic], or in any appeals of any such proceedings or trials, shall in each instance be borne and paid by the Commonwealth. The term "costs" also includes, but is not limited to, charges for court stenographer, district attorney, witness fees, district justice, clerk of court, public defender and court appointed attorney.

nia. This "title" is referred to in 1 Pa.C.S. § 1101(a):

All statutes shall begin in the following style: "The General Assembly of the Commonwealth of Pennsylvania hereby enacts as follows:". Such enacting clause shall be placed immediately after the preamble or the table of contents of the statute, or if there be neither preamble nor table of contents, then immediately after the title.

The "title" of an enacted statute is the same as the title of a bill that is referred to in Article III, Section 3 of the Pennsylvania Constitution, relating to form of bills, which provides: "No bill shall be passed containing more than one subject, which shall be clearly expressed in its title, except a general appropriation bill or a bill codifying or compiling the law or a part thereof." The Supreme Court has held that under the provision now contained in Article III, Section 3, the title of an act must be considered as part of it; the title sets the act's scope and may properly be resorted to as an aid to its construction. *Glen Alden Coal Co. v. City of Scranton*, 282 Pa. 45, 127 A. 307 (1925). *See also MacElree v. Chester County*, 667 A.2d 1188 (Pa.Cmwlth.1995) (stating that a determination of legislative intent may not be based solely upon the title and preamble of a statute, but courts may consult the title and preamble as part of the statutory construction process).

The title of Act 107 is:

An act amending the act of July 22, 1913, (P.L. 912, No. 437), entitled "An act providing for the payment of the costs incurred in the trial of convicts and prisoners escaping, or attempting to escape, from the several penitentiaries and reformatories of the Commonwealth of Pennsylvania, by the respective counties from whose courts the said escaping convicts or prisoners have been commit-

ted; and providing for the maintenance of such convicts under sentence for escape, et cetera," *further providing for escapee costs and for maintenance of escaping convicts under new sentence.* (Emphasis added.)

As quotation of the title of Act 107 shows, the title of the original 1913 Act related solely to trials of convicts and prisoners "escaping, or attempting to escape...." The emphasized language from the title of Act 107 states only that its purpose is to further provide for escapee costs and maintenance of escaping convicts under new sentence; it does not indicate an intent to provide for costs of trials for crimes committed by incarcerated persons generally.

The majority notes correctly that the language from 61 P.S. § 2151(b) at issue in this case, namely, "the costs ... of the trial for crimes and offenses committed on the grounds or within the buildings of any State penal or correctional institution," was added in virtually identical form to Section 2 of the 1913 Act by Section 2 of the Act of February 28, 1933, P.L. 3 (1933 Act). A strong indication of the legislature's intent is found in the text of the statute as amended by the 1933 Act. The language currently in dispute was added to Section 2 of the 1913 Act by Section 2 of the 1933 Act; however, Section 1 of the 1933 Act also amended Section 1 of the 1913 Act as follows, with added text in italics:

That hereafter any and all persons committed or prisoners or convicts escaping, or attempting to escape, from the several correctional institutions, penitentiaries, and reformatories in the Commonwealth of Pennsylvania, or from the lands, jurisdiction, and control of the officers of said penal and correctional institutions, shall be tried in the counties where the said escapes shall have been

committed. [and] Any crimes or offenses committed by such committed persons, prisoners or convicts following any such escape and before apprehension shall be tried in the county where the crime or offense was committed; *and any crimes or offenses committed by such committed persons, prisoners, or convicts on the grounds or within the buildings of such institutions, penitentiaries, or reformatories shall be tried in the county where the institution, penitentiary, or reformatory is located.*

The phrase "such committed persons, prisoners, or convicts" in the added language relates to the subject of the first sentence, namely, "any and all persons committed or prisoners or convicts escaping, or attempting to escape, from the several correctional institutions[.]" Thus the crimes or offenses referred to in the added language were committed by persons escaping or attempting to escape.

Section 2 of the 1933 Act amended Section 2 of the 1913 Act in part as follows, with added language in italics:

> [T]he costs of the trial for escape or breaking away of persons, convicts, and prisoners from the several penitentiaries, correctional institutions, and reformatories in the Commonwealth of Pennsylvania, or the violation by said persons, convicts, and prisoners of any or all of the penal statutes relating to escape, or of the trial for crime and offenses committed after such escape and before apprehension, *or of the trial for crimes and offenses committed on the grounds or within the buildings of the correctional institution, penitentiary, or reformatory,* shall in each instance be borne and paid by the respective counties of the Commonwealth from whose courts the said persons, convicts, and prisoners shall have been originally committed to the said penitentiaries, correctional institutions, or reformatories.

Thus the cost of "the trial for crimes and offenses committed on the grounds or within the buildings of the correctional institution" related to the crimes and offenses described in the language added to Section 1 of the Act of 1913, and as shown above those were crimes and offenses committed in the course of escape.

Many years later Section 1 of the 1913 Act was repealed by Section 2(a) of the Judiciary Act Repealer Act, Act of April 28, 1978, P.L. 202, *as amended,* 42 P.S. § 20002(a) [976]. Section 2 of the 1913 Act, as further amended, was amended by Act 107 of 2000 into the current Section 2(a), and a new Section 2(b) was added. However, the language from former Section 1 of the 1913 Act as amended by Section 1 of the 1933 Act, which provided context and an indication of legislative intent, has been deleted. Nevertheless, that original intent may be ascertained, as discussed above, and it should be followed.

Another indication of the legislature's intent in Act 107 is the addition of the heading "Escapee costs" to Section 2 of the 1913 Act, which formerly had no heading. As noted above, headings prefixed to sections and other divisions of a statute shall not be considered to control but may be considered in the construction of the statute. 1 Pa.C.S. § 1924; *see also Pennsylvania School Boards Ass'n, Inc. v. Public School Employees' Retirement System,* 804 A.2d 737 (Pa.Cmwlth.2002), *aff'd,* 580 Pa. 610, 863 A.2d 432 (2004). The addition of the heading "Escapee costs" to Section 2, 61 P.S. § 2151, certainly implies an intent (consistent with the title of Act 107) to address only costs relating to escapes or attempted escapes.

A correct reading of Section 2 of the 1913 Act as amended by Act 107, in view of the original title, the title of Act 107, the

heading newly provided for the section and the history of previous amendments and additions, is that the legislature did not intend with a single phrase to address a subject matter, namely, all crimes or offenses committed by inmates on state correctional property, that is far beyond the subject matter addressed in the rest of Section 2.

The majority finds support for its interpretation of Act 107 in the provisions of the Act of December 20, 2000, P.L. 916 (Act 122), concerning payment of costs for maintenance of inmates who commit new crimes while in prison. Once again, a close reading of Act 122 leads to a narrow interpretation of the 1913 Act as amended by Act 107. First, I note that the subject matter of providing for the cost of maintenance of inmates convicted of new crimes while in prison, with no limitation to the context of escape, previously was dealt with in a separate act, the former Act of May 17, 1957, P.L. 161, *formerly* 61 P.S. § 2153, which was repealed by Section 3 of Act 122. Second, I note that Section 1 of Act 122 amends Section 3 of the 1913 Act, 61 P.S. § 2152, relating to maintenance of escaping convicts under new sentence, by creating new subsections "(a) County jurisdiction"; "(b) State jurisdiction"; and "(c) Additional police expenses." Section 2 of Act 122 then adds a new Section 4 to the 1913 Act, headed "Criminal offense during confinement," which is the provision that now appears at 61 P.S. § 2152.1 and which applies to crimes committed by confined convicts in general:

Where a person is confined in a State penal or correctional institution either by virtue of his sentence pursuant to his conviction or plea of guilty to a criminal charge or by virtue of a commitment issued by any court of the Commonwealth having jurisdiction *and while so*

*confined any such person commits a criminal offense and is subsequently convicted or enters a plea of guilty thereto,* the expenses of keeping such person in any State penal or correctional institution pursuant to such subsequent conviction or plea of guilty shall be borne by the Commonwealth. (Emphasis added.)

The title and the text of Act 122 stand in marked contrast to the title and the text of Act 107. The title of Act 107 makes no reference to a subject other than escapee costs and providing for the maintenance of escaping convicts. The title of Act 122 is: "An act amending the act of July 22, 1913 (P.L. 912, No. 437), entitled '[full title of 1913 Act quoted],' further providing for maintenance of escaping convicts under new sentence; *providing for criminal offense during confinement;* and making a repeal." (Emphasis added.) Act 122 was intended to provide for general criminal offenses committed during confinement, and its title plainly indicated that fact. The text of Act 122 unambiguously applies to all persons committing criminal offenses while confined in a state institution by virtue of a conviction or a guilty plea. The text of Act 107 contains no indication of such broad application.

As the majority stresses, Act 107 and Act 122 were approved the same day. The Court has noted the statutory construction principles that the legislature intended different meanings when it enacted two separate provisions at the same time, *Department of Auditor General v. State Employees' Retirement System,* 836 A.2d 1053 (Pa.Cmwlth.2003),[2] and that a change of language in different sections of a statute is prima facie evidence of a change in intent, *Shawnee Dev., Inc. v. Commonwealth,* 799 A.2d 882 (Pa.Cmwlth.2002),

---

2. *Subsequent determination,* 860 A.2d 206 (Pa. Cmwlth.2004).

*aff'd,* 572 Pa. 665, 819 A.2d 528 (2003). The difference in the Acts' titles reveals a clear legislative intent to address general inmate crimes in Act 122 and a clear legislative intent not to do so in Act 107.

Based on the above analysis, I disagree that Petitioners are entitled to a declaration that the Department of Corrections must pay *all* costs associated with the prosecution of inmates who commit crimes and offenses on the grounds or within the buildings of any state correctional or penal institution, regardless of whether the crimes or offenses were committed during the course of an escape or an attempted escape. I dissent because the majority's interpretation of Act 107 is at fundamental odds with well-established principles of statutory construction.