Keith FISHER, Petitioner

v.

COMMONWEALTH of Pennsylvania, DEPARTMENT OF CORRECTIONS, Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 9, 2007.

Decided June 8, 2007.

---

Keith Fisher, petitioner, pro se.

Timothy I. Mark, Asst. Counsel and Michael A. Farnan, Chief Counsel, Camp Hill, for respondent.

BEFORE: LEADBETTER, President Judge, and COLINS, Judge, and McGINLEY, Judge, and PELLEGRINI, Judge, and FRIEDMAN, Judge, and SIMPSON, Judge, and LEAVITT, Judge.

OPINION BY Judge PELLEGRINI.

Before this Court in our original jurisdiction are an application for summary relief filed *pro se* by Keith Fisher (Fisher) and a motion for judgment on the pleadings filed by the Department of Corrections (Department) involving Fisher's petition for review claiming that the Department is illegally withdrawing money from his inmate account.

The following facts are undisputed. Fisher was incarcerated at the State Regional Correctional Facility (SRCF) at Mercer, Pennsylvania, and on May 26, 2005, the Court of Common Pleas of Beaver County (trial court) issued an Order/Notice to Withhold Income for Support (Support Order) directing the Department, through SRCF Mercer, to withhold $288 per month from Fisher's income. The order specified that it was to be deducted from pay cycles, and it was limited to money earned. To carry out the Support Order, the Department started deducting that amount from his inmate account by applying DC–ADM 005 "Collection of Inmate Debts" (Policy). However, in doing so, it applied the Policy's definition of "income,"[1] which included "all funds credited to an inmate's account regardless of source," rather than the definition of "income" as used in the Support Order or in the Domestic Relations Code (Code).[2]

1. The only exceptions are refunds of commissary purchases, refunds of purchases initiated through the facility, money sent to the inmate for payment of a private viewing/deathbed visit, Social Security Disability payments and Veterans Administration benefits.

2. Section 4302 of the Code, 23 Pa.C.S. § 4302, defines "income" as "compensation for services, including but not limited to, wages, salaries, bonuses, fees, compensation in kind, commissions and similar items; income derived from business; gains derived from dealings in property; interest; rents; royalties; dividends; annuities; income from

life insurance and endowment contracts; all forms of retirement; pensions; income from discharge of indebtedness; distributive share of partnership gross income; income in respect of a decedent; income from an interest in an estate or trust; military retirement benefits; railroad employment retirement benefits; social security benefits; temporary and permanent disability benefits; workers' compensation; unemployment compensation; other entitlements to money or lump sum awards, without regard to source, including lottery winnings; income tax refunds; insurance compensation or settlements; awards or verdicts; and any form of payment due to and

Because Fisher did not owe Act 84[3] or Crime Victim Compensation or Victim/Witness Services fees, the Department took the position that the Policy permitted it to attach a maximum of 50% of the balance in his inmate account as long as it remained above $10. As of September 2005, Fisher had received $14.40 in income and $300 as personal monetary gifts. Although Fisher had accumulated a total of $364.40 in income, the Department only collected $110 pursuant to the Support Order leaving his account with a balance of $176.02. Similarly, October 2005's report showed that in September 2005, Fisher had received $21.85 in income and $411 in gifts. However, prior to the Department's monthly deduction, Fisher's account balance had been reduced to $45.71, allowing the Department to collect only a total of $35.71 because any further deduction would have rendered it below $10.

Fisher filed a petition for review in our original jurisdiction alleging that the Department was taking funds to satisfy the Support Order from gifts that he received while it only authorized the Department to garnish "income' as that term is defined by Section 4302 of the Code, which did not include gifts. By doing so, he claimed that the Department violated his due process rights under the Fourteenth Amendment of the United States Constitution[4] and Article I of the Pennsylvania Constitution[5] because it was taking money from his account without authority of law. He requested that the Department be enjoined from withholding funds from his inmate account until it determined the source of those funds were not gifts.

The Department then filed preliminary objections contending that Fisher failed to exhaust his administrative remedies through the inmate grievance procedure. After its preliminary objections were dismissed, in its answer and new matter, it alleged that the Policy was fully consistent with the Code and allowed a deduction from Fisher's inmate account no matter what the source, including gifts, to satisfy a debt.

Fisher then filed an application for summary relief, and the Department filed a motion for judgment on the pleadings, both of which are before us.[6] In his application for summary relief, Fisher contends as he did in his petition that he is entitled to summary relief because the Department is illegally seizing more than "income" as

collectible by an individual regardless of source."

3. According to Section 9728 of the Pennsylvania Sentencing Code, 42 Pa.C.S. § 9728, Act 84 fees are attributable to restitution, costs and fines related to an inmate's criminal case.

4. U.S. Const. amend. XIV, § 1.

5. Pa. Const. art. I, § 1.

6. Summary relief is proper where the moving party establishes the case is clear and free from doubt, there are no genuine issues of material fact to be tried, and the movant is entitled to judgment as a matter of law. *Detar v. Beard*, 898 A.2d 26 (Pa.Cmwlth.2006). When ruling on a motion for judgment on the pleadings in our original jurisdiction, we must view all of the opposing party's allegations as true, and only those facts that the opposing party has specifically admitted may be considered against the opposing party. We may only consider the pleadings themselves and any documents properly attached thereto. *Tulio v. Beard*, 858 A.2d 156 (Pa. Cmwlth.2004). A party's motion for judgment on the pleadings will only be granted when there is no issue of material fact and the moving party is entitled to judgment as a matter of law. *Montgomery County v. Department of Corrections*, 879 A.2d 843 (Pa. Cmwlth.2005); *Milton S. Hershey Medical Center of Pennsylvania State University v. Commonwealth*, 788 A.2d 1071 (Pa.Cmwlth. 2001).

dictated by the Support Order [7] by seizing funds in his account that came from gifts, thereby violating his due process rights.[8]

Correspondingly, the Department argues that it is complying with the Support Order because its Policy considers all of the funds in an inmate account to be "income," including monetary gifts which are commingled with other funds. It contends that the Policy's definition of "income" is reasonably related to the legitimate penological interest of ensuring that inmates meet their financial obligations, and that it would be administratively difficult to track the source of funds to ensure that only "income" as defined by Section 4302 of the Code is withheld.

 While it may be administratively difficult for the Department to track "income' from other funds in an inmate account, administrative difficulty does not give it jurisdiction to supplant the Support Order and the Code by applying the Policy's definition of "income" in complying with the Support Order. The Department has only one interest in court orders and that is to carry them out as written, not the way it believes they should have been written or the way the law should have been written. The Support Order was clear that it only sought attachment of Fisher's funds derived from "income," which does not include gifts. Because the Department was collecting income from Fisher's inmate account that was not in accordance with the Support Order or the Code, Fisher's application for summary relief is granted, and the Department's motion for judgment on the pleadings is denied.[9]

President Judge LEADBETTER concurs in the result only.

### *ORDER*

AND NOW, this *8th* day of *June*, 2007, Keith Fisher's application for summary relief is granted, and the Department of Corrections' motion for judgment on the pleadings is denied. The Department of Correction is ordered to cease using the definition of income found in DC–ADM 005 and to use the definition of income found

7. If he was attempting to challenge the terms of the order, Fisher would have to bring a "petition for modification or termination of an existing support order [based on a] ... material and substantial change in circumstances." Pa. R.C.P. No.1910.19. *See also* Pa. R.C.P. No.1910.21.

8. A prisoner has a property interest in his inmate account. *Buck v. Beard*, 583 Pa. 431, 879 A.2d 157 (2005).

9. The dissent claims that the majority is allowing an "end run" against established procedures because Fisher can seek modification of his support order under Pa. R.C.P. No.1910.19 as he has no verifiable assets. While Fisher may not have sufficient income to support the order, under the Rules of Civil Procedure governing support orders, seeking a modification is optional, and the decision to do so rests solely with the obligee. An inmate may not want to seek a modification because he may believe that he will have sufficient income when released to satisfy back due support. Moreover, if the Rules of Civil Procedure governing support orders wanted all support orders against an inmate suspended, they would have so provided.

What Fisher is seeking in this case is to prevent the Department from engrafting its own Policy on the court order. Say Fisher decided in his discretion to file for a modification. The trial judge, following the General Assembly's lead (42 Pa.C.S. § 9728) that an inmate should pay part of his obligation no matter what, refuses. We would still be left with the Department contending that it had a right under the Policy to withhold from all funds, no matter what the source and no matter that the Support Order only allows income to be withheld. The majority is not sanctioning an "end run" around a procedure, but tackling the issue presented by not allowing the Department to trample the plain terms of a court order.

in 23 Pa.C.S. § 4302 in determining income for purposes of complying with the order dated May 26, 2005, of the Court of Common Pleas of Beaver County.

DISSENTING OPINION BY Judge SIMPSON.

I respectfully dissent from the decision to allow a prison inmate to challenge enforcement of a support order outside the framework of the Supreme Court's rules governing actions for support, Pa. R.C.P. Nos.1910.1—1910.50. Because these rules provide an adequate remedy at law for the inmate here and provide a forum for the inmate's two obligees, I would deny summary relief to the inmate and grant judgment on the pleadings to the Department of Corrections (DOC).

It is uncontested that this case involves enforcement of a valid support order issued by the Court of Common Pleas of Beaver County (trial court) to DOC to withhold $288 per month from the income of a state prison inmate, Keith Fisher. In addition, it is clear that the relief sought by the inmate is to reduce the amount of money taken from his prison account and sent to the trial court, for ultimate distribution to the inmate's obligees. Further, it is uncontested that the inmate's obligees are not parties before this Court, and they have not been afforded any opportunity to be heard before judgment ordered by the majority.

Among DOC's arguments is that the inmate failed to avail himself of adequate remedies at law, thereby precluding relief in equity or for mandamus. In particular, DOC contends the inmate failed to seek modification of his support orders while in prison, as now allowed by Pa. R.C.P. No.1910.19(f).

I agree with this argument. The new provision allows a trial court to modify or terminate a charging support order and remit any arrears if "the obligor is unable to pay, has no known income or assets and there is no reasonable prospect that the obligor will be able to pay in the foreseeable future." Pa. R.C.P. No.1910.19(f)(2). Importantly, the procedure requires notice to any obligee and an opportunity to be heard. The Explanatory Comment—2006 addresses the new provision and provides in pertinent part, "Likewise, an obligor with no verifiable assets whose ... incarceration ... precludes the payment of support renders the support order unenforceable and uncollectible, diminishing the perception of the court as a source of redress or relief."

In a footnote, the majority dismisses this contention by suggesting that the inmate is not attempting to challenge the terms of the support order. I disagree. The inmate seeks to have the amount DOC withdraws from his inmate account reduced to zero. Thus, the practical effect of the majority's opinion is to render the support order ineffective. I strongly believe that any procedure which renders a trial court's support order ineffective should begin in the trial court and should include the obligees, consistent with the Supreme Court's rules.

There is another reason why I cannot endorse the result reached by the majority. Under the majority's decision, no payments will be made to the underlying support orders. Thus, arrearages increase for the inmate. As a result, the underlying obligations are never dealt with, problems multiply, and the perception of the courts as a source of redress is diminished. This makes no sense.

There are other arguments made by DOC that have merit, but all the other issues can be resolved by a proceeding in the trial court which involves the obligees. The trial court can then determine wheth-

er the inmate has any assets, from what source amounts came into the inmate's account, and whether, as DOC contends here, the inmate manipulated his inmate account with discretionary purchases to frustrate payment of support.

In sum, I would not permit an end run around a comprehensive set of procedures for establishing and enforcing support. I would require the inmate to seek all relief from the trial court and not from this Court. Accordingly, I would deny summary relief to the inmate and grant DOC's motion for judgment on the pleadings, without prejudice to the subsequent petitions in the trial court.

Judge LEAVITT joins in this dissent.