J-S23013-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| SHERRY L. JENKINS, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ROBERT L. JENKINS, | |
| Appellant | No. 1215 WDA 2018 |

Appeal from the Order Entered August 16, 2018
In the Court of Common Pleas of Bedford County
Civil Division at No(s): 106-S-2013/211113964

BEFORE:  BENDER, P.J.E., NICHOLS, J., and COLINS, J.[*]

MEMORANDUM BY BENDER, P.J.E.:                **FILED JUNE 12, 2019**

Robert L. Jenkins (Husband) appeals from the order entered August 16, 2018, that denied Husband's objections to the reinstatement of spousal support and arrearages due Sherry L. Jenkins (Wife), but terminated the spousal support effective October 3, 2017, the date upon which the parties' final divorce decree was entered.[1]  After review, we affirm.

The trial court supplied the following history of this case in its Pa.R.A.P. 1925(a) opinion, stating:

> On July 11, 2013, a spousal support order was entered requiring [Husband] to pay [Wife] $500.00 per month spousal support.  This

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] Wife has not filed a brief in response to Husband's appeal.

order was terminated at [Wife's] request on September 18, 2014, but was reinstated by agreement on November 20, 2014. [Husband] was incarcerated on March 7, 2016[,] following [his] conviction for driving under the influence. [Husband] was admitted to a State Intermediate Punishment program (SIP). The program was a twenty-four (24) month program, wherein [Husband] would spend at least seven (7) months in state prison, seven (7) months in a halfway house, and the remaining portion on supervision. In December, 2016[,] [Husband] was transferred to an inpatient rehabilitation facility for two months and then on February 21, 2017[,] to the Community Corrections Center from which he was released on May 3, 2018. Upon learning of his incarceration[,] the Bedford County Domestic Relations Office, on March 28, 2016, sent a notice to the parties advising them the Domestic Relations Office would suspend the [spousal support] order without prejudice and remit arrearages without prejudice no less than 60 days after the date of the notice unless a conference was requested. No conference was requested and on June 1, 2016[,] the [o]rder was suspended without prejudice and all arrearages, if any, were remitted without prejudice.

On May 29, 2018, after [Husband's] release, the parties were sent the following notice:

> "The Bedford County Domestic Relations Section intends to reinstate your Support Order no less than 30 days after the date of this notice. Unless a conference/hearing is requested by you, a decision will be made on June 26, 2018. The arrearages that were suspended without prejudice upon your incarceration as well as any arrearages that would have accrued during your incarceration will be reinstated 30 days from the date of this notice."

[Husband] objected to reinstatement and the above referenced hearing was scheduled.

At the hearing, [Husband's] counsel conceded that while at the halfway house [Husband] was available to work.

> THE COURT: What were the conditions at the halfway house? Did he have to stay in the house? Could he go out? Could he work?

MR. KELLEHER: He could. He ultimately gained employment right around the time when the divorce decree was entered in August, September of - - well, the divorce decree was entered in October, but he was able to gain employment in August, September of 2017. (Transcript hearing, August 16, 2018, page 9, lines 5-13.)

As noted, the parties' final decree in divorce was entered on October 3, 2017[,] ending [Wife's] claim for spousal support. At the time of [Husband's] incarceration in March of 2016, there were no arrears in the case. Finally, [Husband] requested an additional hearing for the [c]ourt to consider other factors such as the length of the marriage, and other issues. The [c]ourt declined the request for [an] additional hearing, but allowed [Husband] to supplement the record with documents and to testify if he chose to do so. At the conclusion of the hearing, the [c]ourt gave its[] reasons and reinstated the order including any arrearages that accrued during incarceration, but terminating the order effective October 3, 2017[,] ordering [Husband] to pay $250.00 per month on the $9,990.07 arrearage.

Trial Court Opinion (TCO), 9/24/18, at 1-4 (some citations to the record omitted).

On August 28, 2018, Husband filed this appeal and raised four issues in his concise statement of matters complained of on appeal. However, in his brief to this Court, Husband sets forth the following single issue, which encompasses only the first two issues in his concise statement:

Whether the trial court erred and/or abused its discretion in failing to properly apply Pennsylvania Rule of Civil Procedure 1910.19(f) to the instant case and by failing to apply Superior Court precedent, namely, **Plunkard v. McConnell**, 962 A.2d 1227 [(Pa. Super. 2008)], when it reinstated arrearages that accrued during [Husband's] period of incarceration, inpatient rehabilitation, and time spent at a halfway house as [Husband] was unable to pay, had no known income and there was no reasonable prospect that he would be able to pay in the foreseeable future?

- 3 -

Husband's brief at 4.

To address this issue, we are guided by the following:

When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused.

*Krebs v. Krebs*, 944 A.2d 768, 772 (Pa. Super. 2008) (quoting *Menser v. Ruch*, 928 A.2d 294, 297 (Pa. Super. 2007)). We also note that although many of the opinions cited or quoted by this Court below and those cases relied upon by the trial court and Husband deal with the payment of child support, the reasoning expressed in those decisions relates to spousal support as well.

Husband's issue centers on Pa.R.C.P. 1910.19(f) and this Court's *Plunkard* decision, wherein he argues that "the trial court erred when it reinstated arrearages that accrued during [Husband's] period of incarceration, inpatient rehabilitation, and time spent at a halfway house as [Husband] was unable to pay, had no known income and there was no reasonable prospect that he would be able to pay in the foreseeable future." Husband's brief at 11-12.

We begin by noting that:

Once a support order is in effect, "[a] petition for modification … may be filed at any time and shall be granted if the requesting party demonstrates a substantial change in circumstances." 23 Pa.C.S. § 4352(a); *see also* Pa.R.C.P. No. 1910.19 (stating standard for modification). Accordingly, it is the petitioning parent's burden to "specifically aver the material and substantial change in circumstances upon which the petition is based." Pa.R.C.P. No. 1910.19(a); *see also Colonna v. Colonna*, 788 A.2d 430, 438 (Pa. Super. 2001) (*en banc*) (stating that burden is on moving party), *appeal granted*, 569 Pa. 678, 800 A.2d 930 (2002). A finding of either a "material and substantial change in circumstances" or no such change is reviewed on appeal for an abuse of discretion. *Bowser v. Blom*, 569 Pa. 609, 807 A.2d 830, 834 (2002); [*Larson v. Diveglia*, 549 Pa. 118, 700 A.2d 931, 932 (1997)]. "An abuse of discretion occurs where there is an error of judgment, a manifestly unreasonable decision, or a misapplication of law." *Larson*, 700 A.2d at 932; *see also Bowser*, 807 A.2d at 834 (defining "abuse of discretion" standard).

*Nash v. Herbster*, 932 A.2d 183, 186 (Pa. Super. 2007) (quoting *Yerkes v. Yerkes*, 824 A.2d 1169, 1171 (Pa. 2003)).

We next set forth the language contained in Pa.R.C.P. 1910.19(f), which became effective on May 19, 2006.

**Rule 1910.19. Support. Modification. Termination. Guidelines as Substantial Change in Circumstances.**

\* \* \*

(f) Upon notice to the obligee, with a copy to the obligor, explaining the basis for the proposed modification or termination, the court may modify or terminate a charging order for support and remit any arrears, all without prejudice, when it appears to the court that:

(1) the order is no longer able to be enforced under state law; or

(2) *the obligor is unable to pay, has no known income or assets and there is no reasonable prospect that the obligor will be able to pay in the foreseeable future*.

The notice shall advise the obligee to contact the domestic relations section within 60 days of the date of the mailing of the notice if the obligee wishes to contest the proposed action. If the obligee objects, the domestic relations section shall schedule a conference to provide the obligee the opportunity to contest the proposed modification or termination. If the obligee does not respond to the notice or object to the proposed action, the court shall have the authority to modify or terminate the order and remit any arrears, without prejudice.

Rule 1910.19(f) (emphasis added).

Additionally, we include the 2006 explanatory comment to Rule 1910.19(f), which provides:

New subdivision (f) addresses an increasing multiplicity of circumstances in which the continued existence of a court-ordered obligation of support is inconsistent with the rules or law. An obligor with no known assets whose sole source of income is Supplemental Security Income or cash assistance cannot be ordered to pay support under Rule 1910.16-2. Likewise, an obligor with no verifiable income or assets whose institutionalization, incarceration, or long-term disability precludes the payment of support renders the support order unenforceable and uncollectible, diminishing the perception of the court as a source of redress and relief. Often, the obligor is unable or unaware of the need to file for a modification or termination, or the parties abandon the action. In those circumstances, the courts are charged with managing dockets with no viable outcomes. Both the rules and the federal guidelines for child support under Title IV-D of the Social Security Act provide for circumstances under which a child support case may be closed.

By way of further explanation, we turn to this Court's discussion in *Nash* about the *Yerkes* opinion, which states:

In **Yerkes**, our Supreme Court stated that it had "never directly addressed whether incarceration, standing alone, is a 'material and substantial change in circumstances' that provides sufficient grounds for modification or termination of a child support order." [**Yerkes**, 824 A.2d at 1171]. Thus, the high court discussed the advantages and disadvantages of three distinct approaches other jurisdictions have taken "to assessing the effect of incarceration on support obligations." **Id.** at 1172. After doing so, our Supreme Court stated: "In sum, we conclude that the 'no justification' rule best serves the interests of the child and is in harmony with fairness principles and the child support laws of Pennsylvania. Under the 'no justification' rule, it is clear that incarceration, standing alone, is not a 'material and substantial change in circumstances' providing sufficient grounds for modification or termination of a child support order." **Id.** at 1177 (footnotes omitted). In reaching this conclusion, the high court stated that, to the extent that this Court's decision in **Leasure v. Leasure**, … 549 A.2d 225 (Pa. Super. 1988), in which we held that a child support obligation should be suspended where the obligor is incarcerated, conflicted with the "no justification" approached [*sic*] it has adopted, "we disapprove of it." **Yerkes**, 824 A.2d at 1177 n.2.

In his concurring opinion, Justice Saylor opined that, although he saw merit to the majority's approach, he would endorse this Court's rationale in **Leasure, supra**, in which we afforded the trial court substantial discretion to assess the fact of incarceration as one factor in determining whether to grant a petition for modification or termination of child support. Justice Saylor found this approach to be the better approach, "particularly in the absence of a specific legislative directive otherwise." **Yerkes**, 824 A.2d at 1177 (Saylor, J., concurring). Nevertheless, Justice Saylor found that, given the particular circumstances of the case, the trial court did not abuse its discretion when it denied the appellant's petition for termination of his child support obligation. In a separate concurring opinion, Justice Eakin opined that, although he completely agreed with the majority's statement that "incarceration, standing alone, is not a 'material and substantial change in circumstances' providing sufficient grounds for modification or termination of a child support order[,]" he nevertheless could not agree that incarceration is not a substantial change of circumstance. According to Justice Eakin, "[w]hile incarceration should be acknowledged to be a significant change in circumstance, it may not be grounds for modification or

termination of a child support order, as a matter of public policy." *Id.* (footnote omitted).

*Nash*, 932 A.2d at 186-87.

The *Nash* Court then went on to explain that the appellant's modification petition employed the language of Rule 1910.19(f)(2), just as Husband's petition in the instant case did, *i.e.*, that "the obligor is unable to pay, has no known income or assets and there is no reasonable prospect that the obligor will be able to pay in the foreseeable future." Then, noting that no case law existed that discussed the application of the new rule with the *Yerkes* decision, the *Nash* opinion cited the Commonwealth Court's decision in *Fisher v. Commonwealth, Dept. of Corrections*, 926 A.2d 992, 996 (Pa. Cmwlth. 2007). In a dissenting opinion in *Fisher*, Judge Simpson "agreed with the Department of Correction[s'] assertion that an inmate may 'seek modification of his … support orders while in prison, as now allowed by Pa.R.C.P. No. 1910.19(f).'" *Nash*, 932 A.2d at 188 (quoting *Fisher*, 926 A.2d at 996). The *Nash* Court agreed and, therefore, vacated the order that denied the appellant's petition seeking modification of his support order and directed the trial court "to follow the dictates of Rule 1910.19(f)." *Id.*

The *Plunkard* case, relied upon by Husband, followed the dictates of *Nash*, indicating that

> the law of this Commonwealth now affords an incarcerated parent the ability to petition to modify or terminate their support obligation where they are able to prove that the order is no longer able to be enforced under state law or that the incarcerated obligor parent is without the ability to pay their child support

obligation and there is no reasonable prospect that they will be able [to] do so for the foreseeable future.

**Plunkard**, 962 A.2d at 1230-31 (citing **Nash**, 932 A.2d at 188). This is exactly the process that the trial court followed here. After comparing the length of incarceration, in **Plunkard** – a 6 to 10 year sentence, and in **Yerkes** – a 10 year sentence, to the situation here – a one year sentence in prison and inpatient treatment, plus one year in a halfway house at which time Husband could work, the court concluded that these facts did not comport with an inability to pay support in the foreseeable future. The trial court concluded that:

> The Pennsylvania case law and the Rule of Civil Procedure require the trial court to carefully weigh the claims of an incarcerated individual. In this case, [Husband] was not incarcerated when he resisted reinstatement; he had served approximately a year in prison, and inpatient treatment; and failed to make use of the opportunity given [to] him at the hearing to establish valid reasons why the order should not be reinstated at its previous level. Although it is difficult to see how he had less earning potential after approximately one year in prison[, t]he reinstated order does include arrearages for the period he served in the halfway house, because he was available to work. It also included arrearages for the one[-]year period of his incarceration, because the phrase, "not within the foreseeable future" would not include a period as short as one year.

TCO at 14-15.

Based upon our review of the record, and the case law cited above, we conclude that the trial court did not abuse its discretion in following the dictates of Rule 1910.19(f) and in concluding that the reinstatement of spousal support was proper under the facts of this case. We, therefore, affirm the

court's order denying Husband's objection to the reinstatement of the spousal support order and the reinstatement of all arrearages.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/12/2019