# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania Independent Oil &
Gas Association,            :
                 Petitioner      :
                               :
             v.             :    No. 321 M.D. 2015
                               :    Argued:  June 8, 2016
Commonwealth of Pennsylvania,      :
Department of Environmental        :
Protection,                          :
                 Respondent    :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
                 HONORABLE RENÉE COHN JUBELIRER, Judge
                 HONORABLE ROBERT SIMPSON, Judge
                 HONORABLE P. KEVIN BROBSON, Judge
                 HONORABLE PATRICIA A. McCULLOUGH, Judge
                 HONORABLE ANNE E. COVEY, Judge
                 HONORABLE MICHAEL H. WOJCIK, Judge

**OPINION BY JUDGE BROBSON**             **FILED:  September 1, 2016**

Petitioner Pennsylvania Independent Oil & Gas Association (PIOGA) initiated this action for declaratory relief in our original jurisdiction against Respondent Commonwealth of Pennsylvania, Department of Environmental Protection (DEP), asking this Court to declare that DEP may not apply and enforce Section 3215(c) of the Pennsylvania Oil and Gas Act, also known as Act 13,[1] 58 Pa. C.S. § 3215(c), as part of its well permit application process.  PIOGA contends that the Pennsylvania Supreme Court enjoined application and

---

[1] Act 13 of 2012 is codified at 58 Pa. C.S. §§ 2301–3504.

enforcement of Section 3215(c) of Act 13 in *Robinson Township v. Commonwealth*, 83 A.3d 901 (Pa. 2013) (*Robinson Twp. I*).[2] PIOGA has moved for judgment on the pleadings, and DEP has filed a cross-application for summary relief, seeking dismissal of PIOGA's petition for review.[3] The dispute before the Court is a legal one. For the reasons set forth below, we deny PIOGA's motion and grant DEP's cross-application.

## I. BACKGROUND

### A. Act 13 and *Robinson Twp. I*

In February 2012, Governor Tom Corbett signed Act 13 into law. Act 13 repealed the Oil and Gas Act of 1984.[4] In place thereof, Act 13 amended

---

[2] By Opinion and Order dated December 29, 2015, this Court overruled DEP's preliminary objections and directed DEP to file an answer to PIOGA's petition for review. *Pennsylvania Indep. Oil & Gas Ass'n v. Cmwlth., Dep't of Envtl. Prot.* (Pa. Cmwlth., No. 321 M.D. 2015, filed December 29, 2015) (en banc) (*PIOGA I*). DEP filed its answer to the petition for review on January 28, 2016.

[3] Both an application for summary relief under Rule 1532 of the Pennsylvania Rules of Appellate Procedure and a motion for judgment on the pleadings under Rule 1034 of the Pennsylvania Rules of Civil Procedure seek similar relief. Pa. R.A.P. 1532 note. Summary relief is proper where the moving party establishes the case is clear and free from doubt, there are no genuine issues of material fact to be tried, and the movant is entitled to judgment as a matter of law. *Detar v. Beard*, 898 A.2d 26, 31 n.6 (Pa. Cmwlth. 2006). When ruling on a motion for judgment on the pleadings in our original jurisdiction, we must view all of the opposing party's allegations as true, and only those facts that the opposing party has specifically admitted may be considered against the opposing party. *Tulio v. Beard*, 858 A.2d 156, 158 (Pa. Cmwlth. 2004). We may only consider the pleadings themselves and any documents properly attached thereto. *Id.* A party's motion for judgment on the pleadings will only be granted when there is no issue of material fact and the moving party is entitled to judgment as a matter of law. *Montgomery Cnty. v. Dep't of Corr.*, 879 A.2d 843, 846 n.5 (Pa. Cmwlth. 2005); *Milton S. Hershey Med. Ctr. of Pa. State Univ. v. Cmwlth.*, 788 A.2d 1071, 1075 (Pa. Cmwlth. 2001) (en banc), *aff'd in part, remanded in part*, 821 A.2d 1205 (Pa. 2003).

[4] Act of December 19, 1984, P.L. 1140, *as amended*, 58 P.S. §§ 601.101-.605, repealed by the Act of February 14, 2002, P.L. 87.

Title 58 of the Pennsylvania Consolidated Statutes by re-codifying portions of the repealed Oil and Gas Act of 1984 and adding new provisions organized into three new parts and six new chapters relating to oil and gas development in the Commonwealth. Chapter 32 of Act 13 addresses well permitting and establishes statewide limitations on oil and gas development. As described by our Pennsylvania Supreme Court, "Act 13 comprise[d] sweeping legislation affecting Pennsylvania's environment and, in particular, the exploitation and recovery of natural gas in a geological formation known as the Marcellus Shale." *Robinson Twp. I*, 83 A.3d at 913.

In *Robinson Twp. I*, the Pennsylvania Supreme Court, on appeal from a decision by this Court, considered, *inter alia*, legal challenges to Chapter 32 of Act 13. A plurality concluded that Sections 3215(b)(4), 3215(d), 3303, and 3304 of Act 13 violated Article I, section 27 of the Pennsylvania Constitution, known as the Environmental Rights Amendment.[5] *Id.* at 985 (plurality).[6] Justice Baer, writing separately, concurred with the plurality's conclusion that these sections were unconstitutional, but on substantive due process grounds. *Id.* at 1008-09 (Baer, J., concurring). He also concurred in the plurality's mandate, yielding a

---

[5] The Environmental Rights Amendment provides:

> The people have a right to clean air, pure water, and to the preservation of the natural, scenic, historic and esthetic values of the environment. Pennsylvania's public natural resources are the common property of all the people, including generations yet to come. As trustee of these resources, the Commonwealth shall conserve and maintain them for the benefit of all the people.

Pa. Const. art. I, § 27.

[6] Then-Chief Justice Castille penned the lead opinion, in which Justices Todd and McCaffrey joined.

majority directive, that "application and enforcement of Sections 3215(b)(4), 3215(d), 3303, and 3304 [of Act 13] is hereby enjoined." *Id.* at 1000 (plurality), 1009 (Baer, J., concurring).

Section 3215(b) of Act 13 imposed restrictions on the location of oil and gas wells. Section 3215(b)(1) through (3) provided for well site and related disturbed area setbacks from certain perennial streams,[7] springs, other bodies of water, and wetlands. Section 3215(b)(4) provided that DEP must waive the setbacks under certain conditions:

> The department shall waive the distance restrictions upon submission of a plan identifying additional measures, facilities or practices to be employed during well site construction, drilling and operations necessary to protect the waters of this Commonwealth. The waiver, if granted, shall include additional terms and conditions required by the department necessary to protect the waters of this Commonwealth. Notwithstanding section 3211(e), if a waiver request has been submitted, the department may extend its permit review period for up to 15 days upon notification to the applicant of the reasons for the extension.

58 Pa. C.S. § 3215(b)(4). As noted above, a majority of Supreme Court justices held that this provision, authorizing a waiver of setbacks, was unconstitutional and enjoined its application and enforcement.

---

[7] Section 3215(b) of Act 13 refers to "solid blue lined stream . . . as identified on the most current 7 ½ minute topographic quadrangle map of the United States Geological Survey." The United States Geological Survey uses a solid blue line on its maps to denote a perennial stream, http://pubs.usgs.gov/gip/TopographicMapSymbols/topomapsymbols.pdf (last visited June 22, 2016). *See* Pa. R.E. 201 (relating to judicial notice).

4

In Part V of *Robinson Twp. I*, a majority of the Supreme Court[8] addressed the severability of other provisions in Section 3215, in light of their conclusion that Section 3215(b)(4) was unconstitutional. Among the provisions that the Supreme Court addressed was Section 3215(c), the provision at issue in this matter. Section 3215(c) provides:

> On making a determination on a well permit, the department shall consider the impact of the proposed well on public resources, including, but not limited to:
>
> (1) Publicly owned parks, forests, game lands and wildlife areas.
>
> (2) National or State scenic rivers.
>
> (3) National natural landmarks.
>
> (4) Habitats of rare and endangered flora and fauna and other critical communities.
>
> (5) Historical and archaeological sites listed on the Federal or State list of historic places.
>
> (6) Sources used for public drinking supplies in accordance with subsection (b).

58 Pa. C.S. § 3215(c). The majority also considered the severability of Section 3215(e), which provides:

> The Environmental Quality Board ["EQB"] shall develop by regulation criteria:
>
> > (1) For the department to utilize for conditioning a well permit based on its impact to the *public resources identified under subsection (c)* and for ensuring optimal development of oil and gas resources and respecting property rights of oil and gas owners.

---

[8] Justice Baer joined Part V of the lead opinion. *Robinson Twp. I*, 83 A.3d at 1000 (Baer, J., concurring).

5

(2) For appeal to the Environmental Hearing Board of a permit containing conditions imposed by the department. The regulations shall also provide that the department has the burden of proving that the conditions were necessary to protect against a probable harmful impact of the public resources.

58 Pa. C.S. § 3215(e) (emphasis added).

On severability, the Supreme Court first rejected the request of the challengers to declare the entirety of Act 13 unconstitutional in light of the Supreme Court's decision that certain "core" parts of Act 13 were unconstitutional. *Robinson Twp. I*, 83 A.3d at 998-99. The Supreme Court, however, recognized that "there are *obvious consequences* of certain of our holdings." *Id.* at 999 (emphasis added). In so doing, the Supreme Court acknowledged that the parties did not offer much guidance with respect to a section-by-section severability analysis. Nonetheless, it proceeded to consider the question "in part, to the extent that its application is *obvious* and necessary to provide direction to the parties going forward." *Id.* (emphasis added).

With respect to the setbacks in Section 3215(b)(1) through (3) of Act 13 for well locations, the Supreme Court opined that the waiver provision in subsection (b)(4), which the majority held unconstitutional, was "a key part of the Section 3215(b) scheme." *Id.* Concluding that the General Assembly did not intend that the setback provisions apply in the absence of the waiver provision, the Supreme Court concluded that the provisions of Section 3215(b) were not severable—*i.e.*, were "incomplete and incapable of execution in accordance with the legislative intent." *Id.* Accordingly, the Supreme Court enjoined application and enforcement of Section 3215(b) in its entirety. The Supreme Court's mandate in this regard provides: "The remaining parts of Section 3215(b) are not severable

6

from Section 3215(b)(4) and, as a result, the application or enforcement of Section 3215(b) is enjoined in its entirety." *Id.* at 1000.

With respect to Sections 3215(c) and (e), the Supreme Court concluded, without any additional supporting analysis: "Moreover, *insofar as Section 3215(c) and (e) are part of the Section 3215(b) decisional process*, these provisions as well are incomplete and incapable of execution in accordance with legislative intent. Application of Section 3215(c) and (e) is, therefore, also enjoined." *Id.* at 999 (emphasis added). The Supreme Court's mandate in this regard provides: "Moreover, Sections 3215(c) and (e) . . . are not severable to the extent that these provisions implement or enforce those Sections of Act 13 which we have found invalid and, in this respect, their application or enforcement is also enjoined." *Id.* at 1000 (emphasis added).

### B. Well Permitting Post-*Robinson Twp. I*

PIOGA initiated this action because, after *Robinson Twp. I*, DEP, as part of the well permit application process, continues to seek information from applicants relating to the impact that a proposed well site will have on the public natural resources identified in Section 3215(c) of Act 13. DEP confirms this practice in its Answer to PIOGA's petition for review:

> DEP requires well permit applicants to complete the form entitled "Coordination of a Well Location with Public Resources" (DEP Form No. 5500—PM—OG0076) ("Public Resources Form") and to comply with DEP's Policy for Pennsylvania Natural Diversity Inventory ("PNDI") Coordination During Permit Review and Evaluation (DEP Document No. 021-0200-001) ("PNDI Policy"). By way of further answer, DEP requires well permit applicants to identify the impacts to threatened and endangered species and species of special concern, and to coordinate with applicable jurisdiction agencies if

7

these species may be present at or near the proposed well site consistent with the PNDI Policy.

(DEP Answer ¶ 23.) Through the Public Resources Form, DEP asks, *inter alia*, that the well permit applicant identify public resources in the vicinity of the proposed well site, coordinate with responsible agencies, and describe measures that the applicant will take to protect those public resources. Through the PNDI Policy, DEP seeks, *inter alia*, to identify and mitigate any impact a proposed well site may have on certain threatened, endangered, or special concern species (both flora and fauna).[9]

DEP contends that notwithstanding *Robinson Twp. I*, Section 3215(c) of Act 13 provides DEP with the authority to require applicants to complete the Public Resources Form and to comply with the PNDI Policy and to consider this information in evaluating the impact a proposed well will have on public natural resources. (DEP Answer ¶¶ 23, 24.)

## II. QUESTIONS PRESENTED

In its motion for judgment on the pleadings, PIOGA's principal argument is that DEP currently applies Section 3215(c) of Act 13 by requiring well permit applicants to complete the Public Resources Form and comply with the PNDI Policy. PIOGA contends that by doing so, DEP is violating the Pennsylvania Supreme Court's mandate in *Robinson Twp. I*. Alternatively, PIOGA claims, in response to DEP's answer to the amended petition for review, that no other law authorizes DEP to require well permit applicants to complete the Public Resources Form and comply with the PNDI Policy. Finally, PIOGA

---

[9] Both the Public Resources Form and the PNDI Policy are appended to PIOGA's petition for review.

contends that even if DEP has the authority to require compliance in this regard in the name of protecting the Commonwealth's public resources, there are no standards governing DEP's exercise of that authority, raising constitutional concerns.

In its cross-application for summary relief, DEP's principal argument is that notwithstanding *Robinson Twp. I*, DEP retains authority under Section 3215(c) of Act 13 to protect public resources from the potential impact of oil and gas wells. Alternatively, should this Court conclude that *Robinson Twp. I* enjoined for all purposes application and enforcement of Section 3215(c) of Act 13, DEP contends that its authority to protect public resources reverts to relevant provisions in the repealed Oil and Gas Act of 1984.

Based on these contentions, we will first address the parties' dispute over how to interpret the Pennsylvania Supreme Court's mandate in *Robinson Twp. I* with respect to Section 3215(c) of Act 13. Our resolution of that question will determine whether we must and, if so, how we will address the parties' other issues.

## III. DISCUSSION

### A. The Supreme Court's Mandate

Before considering the Pennsylvania Supreme Court's mandate with respect to Section 3215(c) of Act 13, some background on the substance of that provision provides useful context for the discussion.

Despite the sweeping effect of Act 13, Pennsylvania has long regulated on a statewide basis the location of oil and gas wells as part of the well permitting process. Section 3215 of Act 13 essentially replaced Section 205 of the Oil and Gas Act of 1984, 58 P.S. § 601.205 (repealed 2012). *See generally*

9

*Huntley & Huntley, Inc. v. Borough Council of Borough of Oakmont*, 964 A.2d 855 (Pa. 2009) (discussing overlap between Oil and Gas Act of 1984 and local zoning ordinance regulation of well site location). Like Section 3215, Section 205 of the Oil and Gas Act of 1984 provided specific restrictions on the location of oil and gas wells designed to protect existing water wells, buildings, streams, and other bodies of water. Moreover, like Section 3215, Section 205 of the Oil and Gas Act of 1984 provided for variances and waivers of these restrictions but, unlike Section 3215, only at the *discretion* of DEP—a difference affected by the General Assembly's use of the mandatory word "shall" in Section 3215 of Act 13 instead of the permissive "may" in Section 205 of the Oil and Gas Act of 1984. *Compare* 58 P.S. § 601.205(a), (b) (repealed 2012), *with* 58 Pa. C.S. § 3215(a), (b).

Most relevant to the primary issue before the Court is Section 205(c) of the Oil and Gas Act of 1984, the precursor to Section 3215(c) of Act 13. Consider this side-by-side comparison:

| **Section 205(c) of the Oil and Gas Act of 1984** | **Section 3215(c) of Act 13** |
|---|---|
| The department shall, on making a determination on a well permit, consider the impact of the proposed well on public resources to include, but not be limited to, the following: | On making a determination on a well permit, the department shall consider the impact of the proposed well on public resources, including, but not limited to: |
| (1) Publicly owned parks, forests, game lands and wildlife areas. | (1) Publicly owned parks, forests, game lands and wildlife areas. |
| (2) National or State scenic rivers. | (2) National or State scenic rivers. |
| (3) National natural landmarks. | (3) National natural landmarks. |
| (4) Habitats of rare and | (4) Habitats of rare and |

10

| | |
|---|---|
| endangered flora and fauna and other critical communities. | endangered flora and fauna and other critical communities. |
| (5) Historical and archaeological sites listed on the Federal or State list of historic places. | (5) Historical and archaeological sites listed on the Federal or State list of historic places. |
| | (6) Sources used for public drinking supplies in accordance with subsection (b). |

In large measure, when the General Assembly passed Act 13, it re-enacted Section 205(c) of the Oil and Gas Act of 1984. The only material change was the addition of a sixth class of enumerated "public resources," that being "[s]ources used for public drinking supplies in accordance with subsection (b)"—a cross-reference to the Section 3215(b) *setback and waiver* provisions relating to perennial streams, springs, other bodies of water, and wetlands. With respect to Section 3215(e) of Act 13, which, *inter alia*, directs the EQB to develop regulatory criteria "[f]or the department to utilize for conditioning a well permit based on its impact to the public resources identified under [Section 3215(c) of Act 13]," there appears to be no equivalent in the repealed Oil and Gas Act of 1984.

PIOGA contends that the Supreme Court in *Robinson Twp. I* enjoined application and enforcement of Section 3215(c) in every instance. It relies primarily on language found in Part V of the Supreme Court's opinion, addressing severability. There, as noted above, a majority of the Justices of the Supreme Court found a relation between Section 3215(c) and (e) and Section 3215(b), the latter of which the Supreme Court declared unconstitutional. PIOGA directs this Court to express language within that portion of the opinion, where the Supreme Court enjoins Section 3215(c) and (e) without qualification: "Application of Section 3215(c) and (e) *is, therefore, also enjoined.*" *Robinson Twp. I*, 83 A.3d at

11

999 (emphasis added). (PIOGA Br. in Support of Motion for Judgment on Pleadings at 17.)

DEP, by contrast, contends that the Supreme Court's decision with respect to application and enforceability of Sections 3215(c) and (e) of Act 13 was qualified, or limited, as reflected in the body of the opinion where the Supreme Court expressly provided that the provisions should be enjoined only "insofar as Section 3215(c) and (e) are part of the Section 3215(b) decisional process," which is a reference to the setback from water sources provisions and waiver process. *Robinson Twp. I*, 83 A.3d at 999. DEP contends that whatever link the Supreme Court drew between Section 3215(c) and Section 3215(b), it only enjoined application and enforcement of Section 3215(c) and (e) to the extent of that link. DEP, therefore, as it did under the Oil and Gas Act of 1984, may continue to evaluate proposed well sites for their impact on public natural resources, just not with respect to the "Section 3215(b) decisional process." *Robinson Twp. I*, 83 A.3d at 999. (DEP Br. in Support of Cross-Application for Summary Relief at 13-17.)

Pennsylvania generally follows the rule of *stare decisis*, under which "a *conclusion* reached in one matter should be applied to future substantially similar matters." *Ario v. Reliance Ins. Co.*, 980 A.2d 588, 597 (Pa. 2009) (emphasis added). Much of the parties' respective arguments invites the Court to parse the words used by the Supreme Court in Part V of its opinion in *Robinson Twp. I*. For purposes of enforcing the Supreme Court's decision in *Robinson Twp. I*, however, the *conclusion* is paramount. As explained by retired Judge of the United States Court of Appeals for the Third Circuit, former law professor, and World War II veteran the late Honorable Ruggero J. Aldisert:

12

> *Stare decisis*, the decision of the court, forms the precedent; it is the court's judgment that controls. We may say that a precedent is a legal precept that attaches a definite detailed consequence to a definite detailed set of facts. Thus, a decision or judgment without an accompanying *ratio decidendi* may nevertheless serve as precedent. It follows that, although the *rationes decidendi* are extremely important in determining how courts arrive at their decisions, they should not be confused with actual precedents, *qua* precedents. We follow the doctrine of *stare decisis*, not *stare rationes decidendi*.
>
> Because courts tend to overwrite opinions, it may be often said that a court's "discussion outran the decision."

Ruggero J. Aldisert, *The Judicial Process: Readings, Materials and Cases* 818 (West Publ'g Co. 1984) (1976) (footnotes omitted).

The Supreme Court's conclusion in *Robinson Twp. I—i.e.*, that of the majority of the Justices—is set forth in Part VI of the opinion, titled "Conclusion and Mandate." Pertinently, it provides:

> D. The remaining parts of Section 3215(b) are not severable from Section 3215(b)(4) and, as a result, the application or enforcement of *Section 3215(b) is enjoined in its entirety*. Moreover, Sections 3215(c) and (e), and 3305 through 3309 are not severable *to the extent that these provisions implement or enforce those Sections of Act 13* which we have found invalid and, *in this respect*, their application or enforcement is also enjoined.

*Robinson Twp. I*, 83 A.3d at 1000 (emphasis added).[10] To resolve the principal issue in dispute between DEP and PIOGA, we must interpret the above mandate.

---

[10] As PIOGA points out at page 18 of its Brief in Support of its Motion for Judgment on the Pleadings, in *PIOGA I*, addressing DEP's challenge to PIOGA's standing, this Court observed that the Supreme Court in *Robinson Twp. I* "already found [Section 3215(c) of Act 13] to be unconstitutional." *PIOGA I*, slip op. at 14. This was not an accurate characterization of the **(Footnote continued on next page…)**

Simply stated, PIOGA contends that the mandate enjoins application and enforcement of Section 3215(c) of Act 13 in its entirety. DEP, by contrast, contends that the mandate enjoins application and enforcement of Section 3215(c) only with respect to its application to Section 3215(b) of Act 13, which the Supreme Court enjoined in its entirety.

There is no guiding precedent that governs our resolution of this question, other than this Court's related duties to follow the mandates of the Pennsylvania Supreme Court and to effectuate its decisional law. *See Walnut St. Assocs., Inc. v. Brokerage Concepts, Inc.*, 20 A.3d 468, 480 (Pa. 2011).[11] In

---

**(continued…)**

Supreme Court's decision in *Robinson Twp. I.* As noted above, and as is clear from the Pennsylvania Supreme Court's mandate in *Robinson Twp. I*, the only provisions of Act 13 that the Supreme Court held unconstitutional were Sections 3215(b)(4), 3215(d), 3303, and 3304. *Robinson Twp. I*, 83 A.3d at 1000. The Supreme Court did not address, let alone rule upon, the constitutionality of the remaining portions of Section 3215(b), Sections 3215(c) and (e), and 3305 through 3309. Instead, it held that these provisions are unenforceable (either in whole or in part) because they are not severable from the unconstitutional provisions. *Id.*

[11] We respectfully disagree with the dissent's contention that in addressing the issues before us in this matter, the Court is "reopen[ing] the litigation [in *Robinson Twp. I*] or render[ing] judgment on an issue the Supreme Court has already decided" in *Robinson Twp. I. See Pennsylvania Indep. Oil & Gas Ass'n v. Dep't of Env't Prot.*, ___ A.3d ___ (Pa. Cmwlth., No. 321 M.D. 2015, filed September 1, 2016) (Covey, J., dissenting), slip op. at 7. Rather, this Court is tasked in this matter with doing what courts are routinely asked to do—*i.e.*, interpret precedent. As for the Supreme Court's denial of DEP's Application for Reargument in *Robinson Twp. I*, we do not presume, as the dissent does, to know the reason(s) the Supreme Court denied DEP's application. The order denying the application provides no explicit insight into the mindset of the justices. The dissent apparently believes that in denying reargument, the Supreme Court affirmatively rejected the argument that DEP advances in *this* matter. It is, however, equally plausible that the Supreme Court simply did not believe that DEP's concerns, expressed in its application, over how the Supreme Court's mandate with respect to Sections 3215(c) and (e) of Act 13 might later be interpreted (*i.e.*, PIOGA's interpretation in this matter) warranted **(Footnote continued on next page…)**

14

meeting these duties, we are guided predominantly by the words that the Pennsylvania Supreme Court chose to use in its mandate giving effect to its severability analysis in Part V of its decision in *Robinson Twp. I*. As noted above, the Supreme Court held that Section 3215(b)(4) of Act 13, relating to waiver of water source setbacks, was unconstitutional. Concluding that the remaining portions of Section 3215(b), which established those setbacks, were "not severable" from the waiver provision, the Supreme Court's mandate enjoined application and enforcement of Section 3215(b) "in its entirety."

The Supreme Court's mandate with respect to Section 3215(c) and (e) of Act 13 is less definitive. With respect to its conclusion on severability, the Supreme Court held that Section 3215(c) and (e) are not severable "to the extent" that they implement or enforce Section 3215(b) of Act 13. With respect to enjoining their application and enforcement, the Supreme Court only did so "in this respect." To do as PIOGA asks and interpret the Supreme Court's mandate with respect to Section 3215(c) and (e) as unqualified, like the Supreme Court's mandate with respect to Section 3215(b), would require this Court to ignore key differences in the words that the Supreme Court chose with respect to these provisions. Just as we are obligated to give meaning to every word in a statute, if possible, so too should we endeavor to give meaning to every word chosen by the Supreme Court when enforcing its mandates. *See Commonwealth v. Lobiondo*, 462 A.2d 662, 664 (Pa. 1983).

---

**(continued…)**

reconsideration or reargument under the standards set forth in Rule 2543 of the Pennsylvania Rules of Appellate Procedure (relating to considerations governing allowance of reargument).

We construe the language in the Supreme Court's mandate as providing a narrower injunction with respect to the application and enforcement of Section 3215(c) and (e) of Act 13 than with respect to Section 3215(b) of Act 13. Given the definitiveness of the Supreme Court's mandate with respect to Section 3215(b), we are compelled to construe the added phrases "to the extent" and "in this respect" with respect to the Section 3215(c) and (e) mandate as words of limitation, leaving Section 3215(c) and (e) viable with respect to matters unrelated to Section 3215(b) of Act 13. As noted above, Section 3215(c), like its precursor, Section 205(c) of the Oil and Gas Act of 1984, provides DEP with the authority to consider the impact a well location may have on public resources, such as publicly-owned parks, forests, and game lands; scenic rivers; and historical and archeological sites within the Commonwealth. The only provision of Section 3215(c) linking that subsection to Section 3215(b) is paragraph (6), which provides for DEP to consider the impact of the proposed well on "[s]ources used for public drinking supplies *in accordance with* [Section 3215(b)]." (Emphasis added.) This provision relates to but one of the classes of enumerated public resources that the General Assembly sought to protect in Section 3215(c). The five (5) others bear no relation to the water source setback and waiver provisions of Section 3215(b). Accordingly, they are unaffected by the Supreme Court's mandate in *Robinson Twp. I*. Consistently, it follows that Section 3215(e), which provides the EQB with the duty to develop regulatory criteria, is enjoined only to the extent that the regulatory criteria would bear on the water source setback and waiver provisions of Section 3215(b).

For the above reasons, we reject PIOGA's request for a declaratory judgment that DEP lacks the authority to apply and enforce in any and all respects

16

Section 3215(c) of Act 13 and to consider the impact that a proposed well site will have on public natural resources. To the contrary, DEP's authority under Section 3215(c) to consider the impact that a proposed well will have on public resources, those listed and unlisted, is extant, limited only by the portion of the Supreme Court's mandate in *Robinson Twp. I* that enjoins its application and enforcement with respect to the water source setback and waiver provisions set forth in Section 3215(b).[12] In practice, this means that when DEP considers the impact of a proposed well on a source or sources used for public drinking supplies, it is not constrained to do so "in accordance with" enjoined Section 3215(b).[13]

## B. Regulatory Standard

PIOGA expresses concern that if the Court were to conclude, as we have, that DEP retains some authority under Section 3215(c) to consider and, by conditions, mitigate the impact a proposed well site may have on public resources, there are no standards governing DEP's exercise of that authority, raising constitutional concerns. We disagree. In Act 13, the General Assembly unambiguously expressed its intent that the EQB promulgate regulatory criteria that DEP must use "for conditioning a well permit based on its impact to the public resources identified under [Section 3215(c)] and for ensuring optimal development of oil and gas resources and respecting property rights of oil and gas owners."

---

[12] In light of our disposition of this issue, we need not consider DEP's alternative contentions relating to authority under other laws, including the repealed Oil and Gas Act of 1984.

[13] *But see* Section 3218 of Act 13, 58 Pa. C.S. § 3218 (relating to protection of water supplies).

17

Section 3215(e) of Act 13.[14]  This specific power and duty to promulgate regulations with respect to public resource considerations for well permits is in addition to the power vested in the EQB to promulgate regulations with respect to implementation of Act 13 in general, *see* 58 Pa. C.S. § 3274, and, as noted above, had no equivalent in the Oil and Gas Act of 1984.[15]

Any concerns over how DEP exercises its authority under Section 3215(c) of Act 13 with respect to well permit applications, including, but not limited to, whether DEP follows the regulatory criteria established by the EQB, are better left to the administrative agency process, followed by review in our

---

[14] When interpreting a statute, this Court is guided by the Statutory Construction Act of 1972, 1 Pa. C.S. §§ 1501–1991, which provides that "[t]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." 1 Pa. C.S. § 1921(a). "The clearest indication of legislative intent is generally the plain language of a statute." *Walker v. Eleby*, 842 A.2d 389, 400 (Pa. 2004). "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa. C.S. § 1921(b). Only "[w]hen the words of the statute are not explicit" may this Court resort to statutory construction. 1 Pa. C.S. § 1921(c). "A statute is ambiguous or unclear if its language is subject to two or more reasonable interpretations." *Bethenergy Mines, Inc. v. Dep't of Envtl. Prot.*, 676 A.2d 711, 715 (Pa. Cmwlth.), *appeal denied,* 685 A.2d 547 (Pa. 1996). Moreover, "[e]very statute shall be construed, if possible, to give effect to all its provisions." 1 Pa. C.S. § 1921(a). It is presumed "[t]hat the General Assembly intends the entire statute to be effective and certain." 1 Pa. C.S. § 1922(2). Thus, no provision of a statute shall be "reduced to mere surplusage." *Walker*, 842 A.2d at 400. Finally, it is presumed "[t]hat the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable." 1 Pa. C.S. § 1922(1).

[15] In Pennsylvania, environmental regulation and enforcement is split between three bodies—(1) DEP, which implements and enforces the laws; (2) the EQB, which serves as the administrative rulemaking body; and (3) the Environmental Hearing Board, which serves as the adjudicator in disputed matters. *See Tire Jockey Serv., Inc. v. Cmwlth., Dep't of Envtl. Prot.*, 915 A.2d 1165, 1185 (Pa. 2007).

18

appellate jurisdiction. *See Canonsburg Gen. Hosp. v. Dep't of Health*, 422 A.2d 141 (Pa. 1980).

## IV. CONCLUSION

For the reasons set forth above, PIOGA's motion for judgment on the pleadings is denied, and DEP's cross-application for summary relief is granted.


_____
P. KEVIN BROBSON, Judge

19

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania Independent Oil & : 
Gas Association, : 
                Petitioner : 
                 : 
             v. :   No. 321 M.D. 2015
                 : 
Commonwealth of Pennsylvania, : 
Department of Environmental : 
Protection, : 
              Respondent : 

## O R D E R

AND NOW, this 1st day of September, 2016, the motion for judgment on the pleadings of Petitioner Pennsylvania Independent Oil & Gas Association (PIOGA) is DENIED, and the cross-application for summary relief of the Commonwealth of Pennsylvania, Department of Environmental Protection (DEP) is GRANTED. Judgment is ENTERED in favor of DEP and against PIOGA.

 

                        _____
                        P. KEVIN BROBSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania Independent Oil &     :
Gas Association,     :
             Petitioner     :
    : No. 321 M.D. 2015
             v.     :
    : Argued: June 8, 2016
Commonwealth of Pennsylvania,     :
Department of Environmental     :
Protection,     :
             Respondent     :


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                HONORABLE RENÉE COHN JUBELIRER, Judge
                HONORABLE ROBERT SIMPSON, Judge
                HONORABLE P. KEVIN BROBSON, Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge


CONCURRING OPINION BY
JUDGE McCULLOUGH                 FILED: September 1, 2016


I concur in the Majority's thoughtful analysis, however, I write separately to expound upon the Majority's discussion of the Department of Environmental Protection's (DEP) mandate under section 3215(c) of the Pennsylvania Oil & Gas Act, also known as Act 13, 58 Pa.C.S. §3215(c), to consider the impact of the proposed well on public resources, including public drinking supplies. It is necessary to make this clarification as the parties continue in this process.

As recognized by the Pennsylvania Supreme Court, the Act must comply with the Pennsylvania Constitution, specifically, Article I, section 27, known as the Environmental Rights Amendment, which provides:

> The people have a right to clean air**, pure water**, and to the preservation of the natural, scenic, historic and esthetic values of the environment. Pennsylvania's public natural resources are the common property of all the people, including generations yet to come. As trustee of these resources, the Commonwealth shall conserve and maintain them for the benefit of all the people.

Pa. Const. art. I, §27 (emphasis added).

Significantly, in making a determination as to the impact of a proposed well upon public resources, DEP is instructed that it "shall" consider the enumerated list of public resources. 58 Pa.C.S. §3215(c). However, while section 3215(c) of Act 13 requires DEP to consider the enumerated public resources, the list is by no means exclusive or exhaustive. Clearly, DEP's mandate is to consider the impact of the proposed well on public resources, which includes, but is not limited to, the six enumerated resources.

In full, section 3215 (c) provides:

> On making a determination on a well permit, the department shall consider the impact of the proposed well on public resources, **including, but not limited to**:
>
> (1) Publicly owned parks, forests, game lands and wildlife areas.
> (2) National or State scenic rivers.
> (3) National natural landmarks.
> (4) Habitats of rare and endangered flora and fauna and other critical communities.
> (5) Historical and archaeological sites listed on the Federal or State list of historic places.

(6) Sources used for public drinking supplies in accordance with subsection (b).

58 Pa.C.S. §3215(c) (emphasis added).

The Majority correctly interprets the Supreme Court's holding in *Robinson Township v. Commonwealth*, 83 A.3d 901 (Pa. 2013) (*Robinson Twp. I*), that section 3215(c) is enjoined to the extent that it implements or enforces section 3215(b) of Act 13. However, although paragraph 6 of section 3215(c) is enjoined to the extent it applies to the setback and distance restrictions of 3215(b), I believe it is clear DEP is not precluded from, and is in fact mandated to consider, a proposed well's impact on public resources, which would include sources for public drinking supplies.

In other words, DEP must consider the impact of a proposed well upon public drinking supplies because it is a public resource under the ambit of the prefatory language in section 3215(c). The mandate upon DEP to consider the impact of proposed wells upon public drinking supplies as a public resource is, I believe, integral to the purpose of the Act. Any other interpretation would undermine DEP's duty to consider the impact of a proposed well on public resources and, as trustee, to conserve and maintain public resources for the benefit of all citizens of the Commonwealth.

With respect to how DEP exercises its authority under section 3215(c) with respect to well permit applications (including, but not limited to, whether DEP follows the regulatory criteria established by the EQB), I agree with the Majority that it is better left to the administrative agency process, followed by review in our appellate jurisdiction. (Slip op. at 18.)

_____
PATRICIA A. McCULLOUGH, Judge

PAM - 3

Pennsylvania Independent Oil &       :
Gas Association,       :
                Petitioner       :
                          :
            v.             :
                          :
Commonwealth of Pennsylvania,       :
Department of Environmental       :
Protection,       :   No. 321 M.D. 2015
                Respondent       :   Argued: June 8, 2016


BEFORE:     HONORABLE MARY HANNAH LEAVITT, President Judge
                    HONORABLE RENÉE COHN JUBELIRER, Judge
                    HONORABLE ROBERT SIMPSON, Judge
                    HONORABLE P. KEVIN BROBSON, Judge
                    HONORABLE PATRICIA A. McCULLOUGH, Judge
                    HONORABLE ANNE E. COVEY, Judge
                    HONORABLE MICHAEL H. WOJCIK, Judge


DISSENTING OPINION
BY JUDGE COVEY                         FILED: September 1, 2016


        I respectfully dissent from the Majority's ruling that, by using the phrases "insofar as," "to the extent that" and "in this respect" in its conclusion in *Robinson Township v. Commonwealth*, 83 A.3d 901 (Pa. 2013) (*Robinson Twp. I*), our Supreme Court held that if there are circumstances in which subsections (c) and (e) of Section 3215 of the Oil and Gas Act (Act 13), 58 Pa.C.S. § 3215(c), (e), are applicable independently of the Section 3215(b) well permit decisional process, they are not enjoined.

        The Majority states: "Much of the parties' respective arguments invites the Court **to parse the words used by the Supreme Court in Part V [Severability] of its opinion in *Robinson Twp. I***. For purposes of enforcing the Supreme Court's decision in *Robinson Twp. I*, however, [Part VI] the *conclusion* is paramount."

Majority Op. at 12.  (emphasis added).  I disagree.  To rely on specific words in the Supreme Court's *conclusion* misrepresents the Court's ruling, especially in light of the fact that the Supreme Court included a specific discussion on Section 3215's severability.  *Parsing* certain words, as the Majority has done to support its decision, becomes unnecessary when the statute, and the Supreme Court's rationale and ruling are read in context.

> Section 3215 of Act 13 provides in pertinent part:
>
> **(a) General rule.--**Wells may not be drilled within 200 feet, or, in the case of an unconventional gas well, 500 feet, measured horizontally from the vertical well bore to a building or water well, existing when the copy of the plat is mailed as required by [S]ection 3211(b) [of Act 13] (relating to well permits) without written consent of the owner of the building or water well.  Unconventional gas wells may not be drilled within 1,000 feet measured horizontally from the vertical well bore to any existing water well, surface water intake, reservoir or other water supply extraction point used by a water purveyor without the written consent of the water purveyor.  If consent is not obtained and the distance restriction would deprive the owner of the oil and gas rights of the right to produce or share in the oil or gas underlying the surface tract, the well operator shall be granted a variance from the distance restriction upon submission of a plan identifying the additional measures, facilities or practices as prescribed by the [D]epartment [of Environmental Protection (DEP)] to be employed during well site construction, drilling and operations. The variance shall include additional terms and conditions required by [DEP] to ensure safety and protection of affected persons and property, including insurance, bonding, indemnification and technical requirements. Notwithstanding [S]ection 3211(e) [of Act 13], if a variance request has been submitted, [DEP] may extend its permit review period for up to 15 days upon notification to the applicant of the reasons for the extension.

**(b) Limitation.—**

(1) No well site may be prepared or well drilled within 100 feet or, in the case of an unconventional well, 300 feet from the vertical well bore or 100 feet from the edge of the well site, whichever is greater, measured horizontally from any solid blue lined stream, spring or body of water as identified on the most current 7½ minute topographic quadrangle map of the United States Geological Survey.

(2) The edge of the disturbed area associated with any unconventional well site must maintain a 100-foot setback from the edge of any solid blue lined stream, spring or body of water as identified on the most current 7½ minute topographic quadrangle map of the United States Geological Survey.

(3) No unconventional well may be drilled within 300 feet of any wetlands greater than one acre in size, and the edge of the disturbed area of any well site must maintain a 100-foot setback from the boundary of the wetlands.

**(4) [DEP] shall waive the distance restrictions upon submission of a plan identifying additional measures, facilities or practices to be employed during well site construction, drilling and operations necessary to protect the waters of this Commonwealth. The waiver, if granted, shall include additional terms and conditions required by [DEP] necessary to protect the waters of this Commonwealth. Notwithstanding [S]ection 3211(e) [of Act 13], if a waiver request has been submitted, [DEP] may extend its permit review period for up to 15 days upon notification to the applicant of the reasons for the extension.**

**(c) Impact.--On making a determination on a well permit, [DEP] shall consider the impact of the proposed well on public resources, including, but not limited to:**

**(1) Publicly owned parks, forests, game lands and wildlife areas.**

**(2) National or State scenic rivers.**

**(3) National natural landmarks.**

**(4) Habitats of rare and endangered flora and fauna and other critical communities.**

**(5) Historical and archaeological sites listed on the Federal or State list of historic places.**

**(6) Sources used for public drinking supplies in accordance with subsection (b).**

**(d) Consideration of municipality and storage operator comments.--**[DEP] may consider the comments submitted under [S]ection 3212.1 (relating to comments by municipalities and storage operators) in making a determination on a well permit. Notwithstanding any other law, no municipality or storage operator shall have a right of appeal or other form of review from [DEP's] decision.

**(d.1) Additional protective measures.--**[DEP] may establish additional protective measures for storage of hazardous chemicals and materials intended to be used or that have been used on an unconventional well drilling site within 750 feet of a solid blue lined stream, spring or body of water identified on the most current 7½ minute topographic quadrangle map of the United States Geological Survey.

**(e) Regulation criteria.--The Environmental Quality Board shall develop by regulation criteria:**

**(1) For [DEP] to utilize for conditioning a well permit based on its impact to the public resources identified under subsection (c) and for ensuring optimal development of oil and gas resources and respecting property rights of oil and gas owners.**

**(2) For appeal to the Environmental Hearing Board of a permit containing conditions imposed by [DEP]. The regulations shall also provide that**

> **[DEP] has the burden of proving that the conditions were necessary to protect against a probable harmful impact of the public resources.**
>
> **(f) Floodplains.—**
>
> . . . .
>
> **(g) Applicability.—**
>
> > (1) This section shall not apply to a well proposed to be drilled on an existing well site for which at least one well permit has been issued prior to the effective date of this section.
> >
> > (2) Nothing in this section shall alter or abridge the terms of any contract, mortgage or other agreement entered into prior to the effective date of this section.

58 Pa.C.S. § 3215 (text emphasis added).

In *Robinson Twp. I*, the Pennsylvania Supreme Court declared Section 3215(b)(4) of Act 13 unconstitutional. In determining whether any other subsections of Section 3215 were inseparably connected to Section 3215(b)(4) such that it could not be presumed the General Assembly intended to enact the remaining subsections without the constitutionally-infirm provision, our Supreme Court expressly expounded:

> Setting aside the question of global severability—*i.e.,* whether the specific provisions held to be unconstitutional require that the entire Act be enjoined—there are obvious consequences of certain of our holdings. Thus, we have already recognized that Section 3215(b)(4) which addresses waivers of the general rule requiring setbacks for the protection of certain waters of the Commonwealth, is a key part of the Section 3215(b) scheme. It would appear that the General Assembly did not intend for the setback provision to operate without allowing industry operators to secure waivers from the setbacks. **Absent the enjoined Section 3215(b)(4), the remaining parts of Section 3215(b)—which the citizens do not challenge on**

AEC - 5 -

**appeal—are incomplete and incapable of execution in accordance with the legislative intent. Having held that Section 3215(b)(4) is unconstitutional, we conclude that the remaining parts of Section 3215(b) are not severable**. Accordingly, application of Section 3215(b) is enjoined.

**Moreover, insofar as Section 3215(c) and (e) are part of the Section 3215(b) decisional process, these provisions as well are incomplete and incapable of execution in accordance with legislative intent. Application of Section 3215(c) and (e) is, therefore, also enjoined**.

*Robinson Twp. I,* 83 A.3d at 999 (emphasis added). The Supreme Court used the identical reasoning for enjoining Section 3215(b) in its entirety, as it did to enjoin Sections 3215(c) and (e).

In addition, Section 3215(c)(6) expressly references Section 3215(b). The Supreme Court expressly enjoined Section 3215(b) in its entirety because it found "the remaining parts of Section (b) . . . are incomplete and incapable of execution in accordance with legislative intent." *Robinson Twp. I,* 83 A.3d at 999. A statutory provision that specifically cites a statutory section that has been declared void, makes the dependent provision void. *See* 1 Pa.C.S. § 1925. If the Supreme Court had intended for **only** Section 3215(c)(6) to be enjoined, then it would have so ruled. Rather, it held that "[a]**pplication of Section 3215(c) and (e) is, therefore, also enjoined**." *Robinson Twp. I,* 83 A.3d at 999 (emphasis added).

Similarly, Section 3215(e)(1) explicitly cites to Section 3215(c). The Supreme Court in enjoining the "[a]pplication of Section 3215(c) and (e)" determined, on the same basis that it enjoined Section 3215(b), that they are "incomplete and incapable of execution in accordance with legislative intent . . . [.]" *Robinson Twp. I,* 83 A.3d at 999.

Accordingly, I conclude that the Supreme Court expressly and unequivocally ruled that because Sections 3215(c) and (e) could not be severed from Section 3215(b), their application was enjoined. This conclusion is further supported

by Justice Baer's statement in his Concurring Opinion, wherein he opined: "Given that I would strike Section 3215(b)(4) and (d), I further agree with the lead opinion that the entirety of subsection (b), as well as subsections (c) and (e) would be 'incapable of execution' and must be enjoined." *Id.* at 1009.

This Court is prohibited from revisiting the Supreme Court's holding in *Robinson Twp. I.*

> **[W]e, as an intermediate appellate court are bound by the decisions of the Pennsylvania Supreme Court** and are powerless to rule that decisions of that Court are wrongly decided and should be overturned. *See, e.g., Nunez v. Redevelopment Auth*[.] *of the City of Phila*[.]*, . . .* 609 A.2d 207, 209 ([Pa. Cmwlth.] 1992) ('**as an intermediate appellate court, we are bound by the opinions of the Supreme Court**.').

*Griffen v. Se. Pa. Trans. Auth.,* 757 A.2d 448, 451 (Pa. Cmwlth. 2000) (emphasis added).

After the Supreme Court's decision in *Robinson Twp. I*, DEP filed an Application for Reargument (Application) with the Supreme Court. Therein, DEP asserted that "**the [Supreme] Court's holding that [Sections] 3215(c) and (e) are not severable from [S]ection 3215(b)** misapprehends Section 3215 and bears further review on remand."[1] DEP *Robinson Twp. I* App. for Reargument at 9 (emphasis added). DEP, herein, is doing nothing more than asking this Court to revisit the Supreme Court's ruling in *Robinson Twp. I*. Unlike the Majority, I would not reopen the litigation or render judgment on an issue the Supreme Court has already decided.

___

[1] The Supreme Court denied DEP's Application for Reargument on February 21, 2014. *See* Supreme Court Docket No. 63 MAP 2012. Contrary to the Majority's statement, the Dissent makes no presumption regarding the basis as to why the Supreme Court denied the Application. Rather, reference to the Application is for the sole purpose of revealing DEP's acknowledgement in its Application that the Supreme Court held that Sections 3215(c) and (e) were not severable from Section 3215(b). "It is well settled that this Court may take judicial notice of pleadings and judgments in other proceedings where appropriate." *Lycoming Cnty. v. Pa. Labor Relations Bd.*, 943 A.2d 333, 335 n.8 (Pa. Cmwlth. 2007).

Based on the foregoing, I would hold that the Supreme Court's decision does not require the "pars[ing] [of] words" to ascertain its holding. Majority Op. at 12. Nor do I believe that the Supreme Court ever intended the parties or this Court to rely upon the Statutory Construction Act of 1972[2] to interpret its decision. Rather, the Supreme Court unequivocally stated, without qualification, that "[**a**]**pplication of Section 3215(c) and (e) is**, therefore, also **enjoined**." *Robinson Twp. I,* 83 A.3d at 999 (emphasis added). To hold otherwise gives no effect to this clear language or Justice Baer's express language: "**I** further **agree** with the lead opinion **that the entirety of subsection (b), as well as subsections (c) and (e)** would be 'incapable of execution' and **must be enjoined**." *Id.* at 1009 (emphasis added).

_____
ANNE E. COVEY, Judge

Judge Cohn Jubelirer joins in this dissenting opinion.

---

[2] 1 Pa. C.S. §§ 1501–1991.