# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Rodney Derrickson,            :
            Petitioner     :
                      :
            v.              :    No. 467 M.D. 2017
                      :    Submitted: November 2, 2018
Cindy Hays, John Wetzel,      :
            Respondents   :

BEFORE:     **HONORABLE RENÉE COHN JUBELIRER,** Judge
                   **HONORABLE PATRICIA A. McCULLOUGH,** Judge
                   **HONORABLE CHRISTINE FIZZANO CANNON,** Judge

**<u>OPINION NOT REPORTED</u>**

**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**              **FILED: February 8, 2019**

Presently before this Court are a Motion for Judgment on the Pleadings (Motion) filed by John Wetzel, Secretary of Corrections (Secretary Wetzel), and an Application for Summary Relief (Application) filed by Rodney Derrickson (Derrickson), pro se, an inmate at the State Correctional Institution at Forest (SCI-Forest). In October 2017, Derrickson filed a Petition for Review in this Court's original jurisdiction seeking declaratory and injunctive relief for alleged violations of his First Amendment rights. Derrickson corresponded with an outside organization and was suspended shortly thereafter from his position as vice president of an inmate organization.[1] In the Motion, Secretary Wetzel argues Derrickson's

---

[1] Derrickson initially named as respondents in his Petition for Review Secretary Wetzel and Cindy Hays (Hays), the activities manager at SCI-Forest. Secretary Wetzel and Hays filed

suspension is not a final order reviewable by this Court, and Derrickson has not alleged either a violation of his First Amendment rights or a right to the relief he seeks. Derrickson, contesting the Motion and seeking summary relief on his behalf, argues this Court has jurisdiction over his constitutional claim and his right to relief under the First Amendment is clear. We deny Secretary Wetzel's Motion and deny Derrickson's Application.

Initially, we note that "[b]oth an application for summary relief . . . and a motion for judgment on the pleadings . . . seek similar relief." *Pa. Indep. Oil & Gas Ass'n v. Dep't of Envtl. Prot.*, 146 A.3d 820, 821 n.3 (Pa. Cmwlth. 2016), *aff'd*, 161 A.3d 949 (Pa. 2017). A motion for judgment on the pleadings, pursuant to Pennsylvania Rule of Civil Procedure 1034, Pa.R.C.P. No. 1034, filed in our "original jurisdiction is in the nature of a demurrer," and will be "granted only when there is no genuine issue of fact, and the moving party is entitled to judgment as a matter of law." *Corman v. Nat'l Collegiate Athletic Ass'n*, 93 A.3d 1, 15 (Pa. Cmwlth. 2014). Summary relief is granted pursuant to Pennsylvania Rule of Appellate Procedure 1532(b), Pa.R.A.P. 1532(b), "where no material fact is in dispute and the right of the moving party to relief is clear." *Brown v. Pa. Dep't of Corr.*, 932 A.2d 316, 318 (Pa. Cmwlth. 2007). Applications for summary relief are "denied where there are material facts in dispute or it is not clear that the applicant is entitled to judgment as a matter of law." *Jackson v. Commonwealth*, 143 A.3d 468, 472 n.6 (Pa. Cmwlth. 2016). With these standards in mind, we turn to the facts that are currently undisputed by the parties.

---

preliminary objections, which we sustained in part and overruled in part by opinion filed April 3, 2018. In so doing, we dismissed the action against Hays for lack of original jurisdiction because she is not a statewide officer. *Derrickson v. Hays* (Pa. Cmwlth., No. 467 M.D. 2017, filed April 3, 2018), slip op. at 3.

## I. Facts

Derrickson served as vice president of Hope for Change (HFC), an inmate organization at SCI-Forest. (Petition for Review ¶ 5.) On August 1, 2017, Activities Manager Cindy Hays (Hays), in the role of HFC's staff coordinator, informed HFC's executive board that Fight for Lifers, an outside organization, had contacted SCI-Forest's superintendent about setting up a meeting. Derrickson then informed Hays that he had corresponded with Fight for Lifers previously and instructed the organization to contact the superintendent to ask about working with HFC. (Petition for Review ¶ 6; Secretary Wetzel's Answer and New Matter ¶ 6.) Hays told Derrickson that inmates are not permitted to write correspondence to outside organizations without prior approval. (Petition for Review ¶ 7; Secretary Wetzel's Answer and New Matter ¶ 7.) Hays then informed the HFC executive board that the superintendent wanted the HFC executive board to take action relative to Derrickson's correspondence. The executive board voted to suspend Derrickson from the position of vice president for five months. (Petition for Review ¶ 9; Secretary Wetzel's Answer and New Matter ¶ 9.)

In his Petition for Review, Derrickson requests a declaration recognizing his "First Amendment right to communicate with outside prison reform organizations/groups," and an order declaring unconstitutional any policy that prohibits him from sending outgoing mail to these organizations. (Petition for Review, Wherefore Clause ¶¶ 1, 2.) He also seeks an injunction enjoining Secretary Wetzel from interfering with his "First Amendment Right to freely communicate with outside organizations/groups," interfering with his "expressive association rights in his status as vice[]president of the HFC organization," and "[r]etaliating,

3

harassing[,] and/or administratively sanctioning [him] for engaging in" that activity. (*Id.* ¶ 3.)

Secretary Wetzel filed preliminary objections to Derrickson's Petition for Review that we denied in part, ordering him to file an Answer. Secretary Wetzel filed an Answer and New Matter, to which Derrickson responded. Thereafter, Secretary Wetzel filed the Motion, and Derrickson filed the Application currently before this Court.

## II. Secretary Wetzel's Motion

Secretary Wetzel asks us to grant his Motion and advances three arguments[2] in support: (1) this Court does not have jurisdiction over Derrickson's claim; (2) Derrickson has not shown a right to relief under the First Amendment; and (3) Derrickson is not entitled to the relief he seeks. We will address these in turn.

### a. Whether this Court has Jurisdiction over Derrickson's Claim

Secretary Wetzel argues that Derrickson's suspension from the HFC executive board is not a final adjudication by a Commonwealth agency over which this Court has either original or appellate jurisdiction. Comparing Derrickson's claim to inmate grievances over which this Court has declined jurisdiction in the past, Secretary Wetzel contends the HFC executive board's decision to suspend Derrickson is merely an "internal prison procedure[]." (Secretary Wetzel's Brief (Br.) at 15.) Secretary Wetzel emphasizes the deference afforded prison officials

---

[2] We have rearranged Secretary Wetzel's arguments for ease of discussion.

4

"with regard to such internal management matters" and urges this Court to grant the Motion. (*Id.* at 18.)

Derrickson argues in response that he has raised a constitutional claim, the violation of his First Amendment rights, over which this Court has original jurisdiction. Derrickson asserts that his claim is not a challenge to his suspension, but rather a challenge to "the infringement of his general First Amendment right to communicate and associate by mail with an outside organization." (Derrickson's Br. at 16.) Derrickson also challenges Hays' directive to the HFC executive board to take action against Derrickson for exercising his First Amendment rights.

This Court has original jurisdiction over civil actions "[a]gainst the Commonwealth government, including any officer thereof, acting in his official capacity." Section 761(a)(1)(i) of the Judicial Code, 42 Pa. C.S. § 761(a)(1)(i). While this Court may not review inmate grievances, we may exercise our original jurisdiction where the claim involves "the violation of a specific constitutional right." *Bronson v. Cent. Office Review Comm.*, 721 A.2d 357, 359 (Pa. 1998). As such, we have rejected claims seeking review of inmate grievance procedures under the guise of constitutional violations. In *Shore v. Pennsylvania Department of Corrections*, a petitioner filed a claim in our original jurisdiction alleging that the Department's procedure for denying access to photographs mailed to inmates was unconstitutional under the First Amendment. 168 A.3d 374, 377-78 (Pa. Cmwlth. 2017). The petitioner filed his claim with this Court only after he was unsuccessful in pursuing an inmate grievance. In ruling on the Department's preliminary objections, we rejected the petitioner's First Amendment argument on the basis that the policy was constitutional on its face and the inmate had not alleged facts to undermine a legitimate penological interest. *Id.* at 380. Further, to the extent that

the petitioner argued the grievance officer applied the Department's policy in an unconstitutional manner, we determined we did not have original jurisdiction to consider that claim. *Id.* We concluded we lacked original jurisdiction because the petitioner "essentially dispute[d] the applicability of the [Department's] policy on a factual level," and not the violation of a specific constitutional right. *Id.* at 381.

We note first that Derrickson brought his claim in our original jurisdiction and does not challenge the outcome of any internal grievance procedures he initiated, so we need not determine whether we would have appellate jurisdiction over the claim. As it relates to our original jurisdiction, Derrickson's claim is properly before this Court because it is a challenge regarding alleged violations of his specific constitutional rights under the First Amendment. Contrary to Secretary Wetzel's contention, Derrickson does not claim that his suspension as HFC vice president is a constitutional violation. Instead, Derrickson argues that a Department policy requiring prior approval before he can communicate with outside organizations violates his constitutional rights. Although Derrickson did initiate inmate grievances prior to this litigation, which were unsuccessful, Derrickson does not challenge the outcome of those inmate grievances now. Unlike the petitioner in *Shore*, Derrickson does not dispute a grievance officer's application of the policy, but argues the constitutionality of that policy. We have original jurisdiction over Derrickson's claim.

b. *Whether Derrickson has shown a right to relief for infringement on his First Amendment Rights*

Secretary Wetzel argues that he is entitled to judgment on the pleadings because the Department did not violate Derrickson's First Amendment rights, as Derrickson's right to communicate with outside organizations is subject to

6

"legitimate penological concerns" in order to "further the efficient operation of the inmate group as well as the institution." (Motion ¶ 7(a), (e)-(f).) Specifically, Secretary Wetzel proffers that "the Department has an interest in making sure that the personal views of [HFC b]oard members are not confused with those of inmate groups." (Secretary Wetzel's Br. at 17.) Further, Secretary Wetzel contends that the Department did not retaliate against Derrickson for his speech, but rather the HFC executive board made the decision to suspend Derrickson from his position pursuant to the organization's bylaws. Additionally, Secretary Wetzel argues that Derrickson has not established the elements of a retaliation claim.

In response, Derrickson contends the Department has no explicit rule requiring prior approval before an inmate can respond to personal correspondence received from an organization. Derrickson argues that the Department "lack[s] any penological justification for restricting" his right to respond to such correspondence. (Derrickson's Br. at 9.) Further, Derrickson disputes that he ever alleged a retaliation claim, as Secretary Wetzel contends, but argues his First Amendment rights to communicate and associate are violated by the Department's policy restricting his correspondence with an outside organization.

In analyzing First Amendment claims by inmates, we look first to see whether the inmate has alleged an infringement of a constitutional right. If so, we then determine whether the "infringement rises to the level of a constitutional violation, given the" unique standard applied to inmates. *Brown*, 932 A.2d at 318 (internal quotation marks and citation omitted). Simply because a "legal mail policy burdens inmates' First Amendment rights does not compel a conclusion that the policy is unconstitutional." *Id.* at 319. Because inmates maintain their First Amendment rights to correspond via mail, prison officials cannot "censor inmate correspondence

7

simply to eliminate unflattering or unwelcome opinions," unless that censorship furthers an interest such as security or order. *Brooks v. Andolina*, 826 F.2d 1266, 1268 (3d Cir. 1987) (internal quotation marks and citation omitted). Therefore, "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). For policies restricting an inmate's outgoing mail, we apply a test to determine "whether the regulation furthers an important or substantial government interest unrelated to the suppression of expression and whether the regulation is no more intrusive than is necessary to protect that interest." *Hamm v. Rendell*, 166 F. App'x. 599, 603 (3d Cir. 2006) (citing *Procunier v. Martinez*, 416 U.S. 369 (1974) (overruled in part on other grounds)[3]). In analyzing whether there is a legitimate penological interest, we give substantial deference to prison administrators and officials. *Bussinger v. Dep't of Corr.*, 29 A.3d 79, 84 (Pa. Cmwlth. 2011), *aff'd*, 65 A.3d 289 (Pa. 2013). However, there has been less deference afforded to prison officials with regard to restrictions on outgoing, as compared to incoming, mail because the security concerns arising out of outgoing mail "are of a categorically lesser magnitude." *Castle v. Clymer*, 15 F. Supp. 2d 640, 661 (E.D. Pa. 1998) (quoting *Thornburgh v. Abbott*, 490 U.S. 401, 413 (1989). This Court has recognized various legitimate penological interests, including:

> (a) maintaining internal security for the protection of prison employers, prisoners, and visitors; (b) deterring the use of drugs and alcohol in prisons; (c) preventing future crime; (d) the rehabilitation of inmates; (e) fair and appropriate treatment among inmates; (f) curbing sexually-offensive behavior in the prison; and (g) controlling/eliminating the flow of contraband in prisons.

---

[3] The test set forth in *Procunier* has been overruled as to incoming mail, but still applies to restrictions concerning outgoing mail. *See Thornburgh v. Abbott*, 490 U.S. 401, 413 (1989).

*Bussinger*, 29 A.3d at 87. Keeping these standards in mind, we look to the specific allegations of Derrickson's claim.

Derrickson and Secretary Wetzel agree that Derrickson has a constitutional right to communicate via mail. (Petition for Review ¶¶ 10-11; Secretary Wetzel's Answer and New Matter ¶ 40; Secretary Wetzel's Br. at 11.) However, there are further disputes of material fact between the parties that preclude us from determining whether there is an infringement of that right, and, if so, whether the infringement amounts to a constitutional violation. The parties disagree about almost all aspects of the disputed correspondence including its content, the capacity in which Derrickson sent it, and whether it was previously approved. Derrickson contends that he corresponded with Fight for Lifers in a personal capacity, and not as a representative of HFC. (Petition for Review ¶ 6; Derrickson's Answer to New Matter ¶ 6.) Derrickson also provides a sworn affidavit by HFC president Kenneth Mueses (Mueses), in which Mueses states that Derrickson was not required to obtain executive board approval "to respond to any personal mail he personally received from outside organizations." (Application, App. A.) Secretary Wetzel does not specifically respond to this; however, his argument hinges upon the contention that Derrickson ran afoul of the Department's policy because he sent the correspondence on behalf of the organization. Neither party has produced a copy of Derrickson's letter to Fight for Lifers.

Further, Secretary Wetzel argues that Derrickson was previously instructed not to correspond with outside organizations without approval. (Secretary Wetzel's Answer and New Matter ¶¶ 7, 28.) Yet, Derrickson contends otherwise, denying that he was ever previously notified that correspondence with outside organizations required approval. (Derrickson's Answer to New Matter ¶ 28.) It is also unclear

9

whether Derrickson's correspondence was, in fact, approved in the first place. Derrickson cites to the HFC meeting minutes from August 1, 2017, which report that Derrickson stated "the executive [board] had approved the proposals for the Let's get free commutation seminar and contact letters ha[d] been sent out by [Hays] herself." (Petition for Review, App. B at 2; Secretary Wetzel's Answer and New Matter, Ex. A.) Whether the communication was approved, as Derrickson contends, goes directly to questions relating to the applicability of the policy at issue and whether it infringed upon Derrickson's rights. Finally, as for the legitimate penological interests proffered by Secretary Wetzel, such as keeping separate the views of individual inmates from those of the HFC, it remains unclear whether they are interests of the Department or merely interests of HFC and other inmate organizations.

These facts surrounding Derrickson's correspondence are essential to a determination of whether and to what extent the Department has a legitimate penological interest, and, thus, whether there is a constitutional violation of Derrickson's First Amendment rights. Given this, we cannot find that Secretary Wetzel currently has a clear right to relief.

To the extent Derrickson alleges a retaliation claim,[4] the disputes of material fact again preclude us from presently determining that Secretary Wetzel is entitled to judgment on the pleadings. In order to succeed on a First Amendment retaliation

---

[4] Although Secretary Wetzel's argument focuses almost exclusively on Derrickson's inability to establish a retaliation claim, we note that Derrickson does not allege a retaliation claim in his Petition for Review. Derrickson seeks an injunction enjoining Secretary Wetzel from retaliating against him for his speech, but does not allege that Secretary Wetzel retaliated against him for his correspondence to Fight for Lifers. Additionally, Derrickson argues in his brief that he "never plead [sic] a retaliation claim," but rather "raised a First Amendment violation claim asking this Court to recognize his free speech right to communicate by mail, and to freely associate with outside prisoner advocacy organizations and groups." (Derrickson's Br. at 9.)

claim, a petitioner must state sufficient facts showing the petitioner "(1) . . . engaged in constitutionally protected conduct; (2) the retaliation against that conduct resulted in adverse action; (3) the protected conduct was a substantial and motivating factor for the retaliation; and (4) the retaliatory action did not further a legitimate penological goal." *Richardson v. Wetzel*, 74 A.3d 353, 357 (Pa. Cmwlth. 2013). Both parties agree that Derrickson engaged in a constitutionally protected activity. Again, however, they dispute material factual issues relating to determination of the other three elements. First and foremost, Secretary Wetzel argues that there was no adverse action, asserting that Derrickson was only temporarily suspended as HFC vice president for five months, which "would not deter a person of ordinary firmness." (Secretary Wetzel's Br. at 11.) Additionally, Secretary Wetzel disagrees that any adverse action occurred at the hands of the Department, arguing that it was on the HFC executive board's own initiative, not Hays' direction, that Derrickson was suspended from his position.

Secretary Wetzel also asserts that the HFC executive board made the final decision to suspend Derrickson as vice president pursuant to its own bylaws, and therefore Derrickson's protected conduct was not a motivating factor for his suspension. Specifically, Secretary Wetzel cites to Article 16 of HFC's bylaws, which states that "[a]ny [b]oard [m]ember may be removed as a result of conduct detrimental to the [o]rganization's best interests and/or good name." (Secretary Wetzel's Answer and New Matter ¶ 35, Ex. F, HFC's Bylaws.) Secretary Wetzel also relies upon Department Policy 7.8.1(A)(3), which reserves for prison administration "the option of dismissing from chapter membership any member, including officers, for behavior detrimental to the chapter's operation within the

11

facility including incompetence or mismanagement."[5] (Secretary Wetzel's Answer and New Matter ¶ 33, Ex. D, Department Policy 7.8.1(A)(3).) According to Secretary Wetzel, Derrickson's suspension as HFC vice president was pursuant to these policies, which reflect a legitimate penological interest, and are not a violation of or retaliation for Derrickson's exercise of his First Amendment rights.

Derrickson disagrees, asserting that Hays directed the HFC executive board to take action against him. Derrickson supports this with Mueses' affidavit, which states that Derrickson's "suspension was from the direction[] of . . . Cindy Hays[] at the executive board meeting held on August 1, 2017." (Application, App. A.) Derrickson admits the existence of the HFC bylaws and Department Policy 7.8.1. Yet, because of the factual disputes between the parties, we cannot determine whether Derrickson's conduct violated those policies by demonstrating mismanagement of HFC, in violation of HFC's bylaws, or acting in a manner detrimental to the organization, contrary to Department Policy 7.8.1. Furthermore, these policies and Derrickson's suspension are not the focus of Derrickson's contention in his Petition for Review. (*See* Derrickson's Br. at 9.) Instead, Derrickson challenges a policy prohibiting his communication with outside organizations without prior approval as violating his First Amendment rights. (*Id.* at 9, 14.)

---

[5] In no pleading does Secretary Wetzel cite to a specific Department rule that prohibits inmates from contacting outside organizations on behalf of an inmate organization without prior approval. Nonetheless, we note that Department Policy 7.8.1(A)(2) states in relevant part that the signature of the organization's staff coordinator "shall appear on all correspondence, memos, etc., which are initiated from the organization." (Secretary Wetzel's Answer and New Matter, Ex. D, Department Policy 7.8.1(A)(2).) However, it is unclear whether this policy applies here, as Derrickson alleges his correspondence was personal.

12

The existence of such disputed material facts prevents us from granting Secretary Wetzel's Motion with regard to whether there is an established constitutional violation and, inasmuch as Derrickson alleges one, a retaliation claim.

*c. Whether Derrickson has a Clear Right to Declaratory Judgment and Injunctive Relief*

Finally, Secretary Wetzel contends that Derrickson has not shown that he is entitled to declaratory or injunctive relief. Secretary Wetzel argues Derrickson has not shown that a declaration "will be of practical help in ending the controversy." (Secretary Wetzel's Br. at 19.) Further, Secretary Wetzel asserts that Derrickson has not pled facts showing that he is legally entitled to communicate with outside groups without restriction and that he would suffer irreparable harm without the injunction.

Derrickson responds that he has a clear right to the relief he seeks because his loss of First Amendment rights amounts to an irreparable injury, particularly as it relates to his suspension from the HFC executive board. Derrickson contends that the Department's policy restricting inmate communication with outside organizations without prior approval constitutes an imminent threat to First Amendment rights that is the proper subject of injunctive relief.

This Court has "the power to declare rights, status, and other legal relations whether or not further relief is or could be claimed." Section 7532 of the Declaratory Judgments Act, 42 Pa. C.S. § 7532. Derrickson seeks a declaration that he has a First Amendment right to communicate with outside organizations and that a policy restricting that right is unconstitutional. As established above, while Derrickson does have a right to communicate via the mail while he is incarcerated, subject to restrictions, *Brown*, 932 A.2d at 319, it is unclear at this stage of the litigation whether Derrickson has established a violation of that right. Because there are

13

remaining questions of fact relevant to Derrickson's letter and, in turn, the Department's alleged legitimate penological interest, we cannot assess whether Derrickson has a right to declaratory relief.

Derrickson has also requested an injunction. In order to establish a right to permanent injunctive relief, petitioners must show "(1) the right to relief is clear, (2) the injunction is necessary to avoid an injury that cannot be compensated by damages, and (3) that greater injury will result if the court does not grant the injunction than if it does." *Mazin v. Bureau of Prof'l & Occupational Affairs*, 950 A.2d 382, 389 (Pa. Cmwlth. 2008).

Presently, we cannot agree with Secretary Wetzel that Derrickson has not shown a right to injunctive relief. Not only is Derrickson's right to relief uncertain, but there remains a dispute about the injury Derrickson suffered. Secretary Wetzel contends that Derrickson was "only temporarily suspended" as vice president and is not restricted from any and all communication with outside organizations. (Secretary Wetzel's Br. at 20.) Derrickson responds that he is now apprehensive to write to outside organizations, including those to which he is an advisor, because of this incident. Derrickson also asserts that Hays has advised him he may no longer run for a position on the executive board as a result of his suspension. (Derrickson's Br. at 19.) The resolution of these factual disputes is necessary in order for us to determine whether there may be a right to injunctive relief. Without these necessary facts established, we are constrained to deny Secretary Wetzel's Motion.

### III. Derrickson's Application

In his Application, Derrickson argues he is entitled to the relief that he seeks in his Petition for Review. Derrickson urges us to grant his Application because, as

Secretary Wetzel acknowledges, Derrickson has a First Amendment right to communicate with those outside the prison. (Derrickson's Br. at 8.) For the same reasons we deny Secretary Wetzel's Motion, we must deny Derrickson's Application. The parties do not agree as to the capacity in which Derrickson corresponded with Fight for Lifers and whether the communication was previously authorized. Thus, we cannot determine if there was a constitutional violation. As a result, we cannot find that either party has a clear right to relief at the present procedural posture.

## IV.    Conclusion

Derrickson alleges a specific constitutional violation that falls within this Court's original jurisdiction. However, there are disputes of material fact that preclude us from applying a constitutional analysis and, in turn, finding that either party has a clear right to relief. Therefore, we deny both Secretary Wetzel's Motion and Derrickson's Application.

_____
**RENÉE COHN JUBELIRER,** Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Rodney Derrickson,                              :
                          Petitioner            :
                                                :
          v.                                    :     No. 467 M.D. 2017
                                                :
Cindy Hays, John Wetzel,                        :
                          Respondents           :

# **O R D E R**

    **NOW**, February 8, 2019, the Motion for Judgment on the Pleadings filed by John Wetzel and the Application for Summary Relief filed by Rodney Derrickson are **DENIED**.

                                                 _____

                                                 **RENÉE COHN JUBELIRER,** Judge